# HENRY H. WYLDER

*v.*

# LEVI CRANE *et al.*

1. AMENDMENT *of answer in chancery—when and on what terms allowable.* Permission to a party to amend his answer is a matter of discretion in the chancellor, and will always be allowed in the promotion of justice and when injury can not result to the opposite party.

2. And in cases where injury might result unless time is given to the opposite party to meet the change in the case produced by the amendment, the court should always refuse leave to amend, or give reasonable time to the other party to meet the amendment.

3. WAIVING ANSWER UNDER OATH—*by amended bill.* The effect of an answer under oath, to an original bill calling for an answer under oath, can not be avoided by the filing of an amended bill waiving the oath, and an answer to the same not under oath. The answer under oath, to the original bill, would still be evidence on the hearing of the cause, so far as responsive to the bill.

4. CHATTEL MORTGAGES—*rights of prior and junior mortgages.* In a suit to subject property to payment of a chattel mortgage, sold under foreclosure of a prior mortgage, it was *held*, the prior mortgage, not being shown to have been fraudulent when it was foreclosed, barred and foreclosed the equity of redemption of the mortgagor, and also of the mortgagee under the junior mortgage.

5. SAME—*notice of sale—public and private sales.* Where the power of sale contained in a chattel mortgage does not require notice of sale to be given, the mortgagee has the option to give notice or not as he may choose, and he may sell at public or private sale, but as between the mortgagor and mortgagee, the sale, to be binding, must be fair.

6. SAME—*of the possession of the mortgaged property.* Where a chattel mortgage provided that the mortgaged property should remain with the mortgagor until the maturity of the debt, which was January 1, 1861, but was permitted to retain the possession, as to a portion of the property, until the spring of 1861, and of the residue until the autumn of 1862, it was *held*, the mortgage was fraudulent and void as to a *bona fide* purchaser of the property at the dates last named.

7. SAME—*irregularity in sales—subsequent purchasers.* A *bona fide* purchaser, without notice, from the purchaser at a foreclosure sale of a chattel mortgage, is not required to inquire whether such sale was regular, but must be protected.

8.  And if such sale is irregular, the mortgagor, or his assigns or credit-ors, should take steps to enforce their liens, or to make redemption before the rights of innocent purchasers have intervened, or be barred in their rights.

9.  CHANCERY—*remedy at law.*   Upon a bill in chancery being filed by a junior mortgagee of chattels, the mortgagor being made a party defendant, to subject property, sold under foreclosure of a prior mortgage, to payment of his debt, it was *held,* upon failure to establish his right to equitable relief against the property, the complainant could not obtain a decree against the mortgagor for payment of his debt, there being a complete remedy at law, unless such relief was prayed for in the bill.

WRIT OF ERROR to the Alton City Court, the Hon. HENRY S. BAKER, Judge, presiding.

The opinion states the case.

Mr. SETH T. SAWYER, for the plaintiff in error.

Messrs. WARREN & POGUE, for the defendants in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It appears from the record in this case, that one Levi Crane was indebted to one Peter B. Hudson, and on the thirty-first day of December, 1859, the former executed to the latter a chattel mortgage on a portable saw and grist mill and engine, with a lot of other personal property. It was duly recorded on the same day. Afterwards, on the sixteenth day of February, 1860, Crane, being indebted to complainant, executed to him a mortgage on the same property. The note due to Hudson not having been paid at maturity, he, on the day it fell due, took possession of the property mentioned in the mortgage, and after advertising it, sold the same in pursuance to the power contained in the mortgage, and one Meade Vaughn became the purchaser. Vaughn being the owner, on the first of April, 1862, sold the same to one Pliney G. Hays for $300, who took and remained in possession until the twentieth

of the following October, when he sold the engine and saw mill and appurtenances to defendant, Massey, for $600. He denies all knowledge of complainant's claim. Massey took possession in December following his purchase, he having purchased previously to that time the grist mill of Vaughn, and had remained in possession until this bill was filed. Massey denies that he ever claimed any portion of the remainder of the property, and states in his answer that a portion had died and that the balance had been taken out of his possession.

This bill was filed to subject the property in Massey's possession, and which he purchased of Vaughn and Hays, to sale for the satisfaction of complainant's mortgage, and for an account of the rents and profits arising from the use of the property by defendant, Massey. On the hearing in the court below, the bill was dismissed at complainant's costs.

It is first urged, that the court below erred in permitting defendant, Massey, to amend his answer. Such amendments have ever been a matter of discretion in the chancellor, and will always be allowed in the promotion of justice, and where injury can not result to the opposite party; and in cases where injury might be the result unless time is given to the opposite party to meet the change in the case produced by the amendment, the court should always refuse leave to amend or give reasonable time for the other party to meet the amendment. In this case there was no such change in the pleadings produced by the amendment, as could have worked the least injury to plaintiff in error. There is no force in this objection.

It is next urged, that the court below erred in dismissing complainant's bill, and in refusing the relief sought. Defendant in error, Massey, sets up a paramount title in himself, superior to the claim of plaintiff in error, and it is insisted that it devolved on him to prove it, and that he has failed. He has shown that Crane, the common source of title, gave to Hudson a prior mortgage, and that it was foreclosed under the power contained in the mortgage, and has proved that he derives title from the purchaser at that sale, of a part of the

property, and from a grantee of the purchaser at that sale, of the remainder; and the evidence fails to show that his purchase was made in fraud of the rights of plaintiff in error. Hudson's mortgage, being the elder, and not having been shown to have been fraudulent, when it was foreclosed, barred and foreclosed the equity of redemption, both of the mortgagor and plaintiff in error.

The oath of defendants in error was not waived, and Massey answered under oath and shows what title he holds, and how it is derived, and his answer stands uncontradicted, and is sufficient to sustain the decree. It is true, an amended bill was filed, and an oath was waived to the answer it called for, and it was so filed. But by the amended bill plaintiff in error could not avoid the effect of the answer called for and made under oath to the original bill. Plaintiff in error having so called for and obtained it, he could not thus escape its effect. The answer to the original bill was therefore evidence on the hearing of the cause, so far as it was responsive to the bill, and it proved Massey's title to the property.

Again, Hudson swears that he sold the property under the mortgage, and that Vaughn became the purchaser, when the note fell due; that the sale was at public auction, and Vaughn became the purchaser. It will be observed that the power of sale contained in the mortgage does not require a notice to be given, and in the absence of such a requirement, the mortgagee had the option to give notice or not, as he might choose, and he might sell at public or private sale; but as between the mortgagor and mortgagee, to be binding, the sale should have been fair. It is also urged, that inasmuch as Vaughn had received an assignment of the mortgage on a previous purchase from Hudson, the latter thereby became the mortgagee, and as such, could not purchase at Hudson's sale so as to bar the equity of redemption. This may be true as far as Hudson and Vaughn are concerned, had Crane or plaintiff in error filed a bill to redeem before Vaughn sold the property to a *bona fide*

purchaser, but it is unnecessary to discuss that question in this case, as it depends upon other principles.

Massey purchased, as he swears, in good faith, of a person claiming title, in possession of the property, under a purchase on a sale to foreclose, or from his grantee. He pays a valuable consideration, and, as some of the witnesses swear, its full value. He purchased without notice of any adverse claim of any kind, as he swears, and there is no evidence to the contrary. Under such circumstances, it would operate with great hardship if his title should be required to yield to that of the mortgage of plaintiff in error, junior in date, and which has laid dormant for four or five years.

Again; Massey purchased of Vaughn and Hays long after the mortgage to plaintiff in error fell due. It became due on the first of January, 1861, while Massey purchased the grist mill of Vaughn in the spring of 1861, and the saw mill, etc. of Hays, in the autumn of 1862, and they were both in possession at the time he purchased. Thus it is seen that plaintiff having failed to reduce the property to his possession for such a length of time after its maturity, it became fraudulent as to creditors or purchasers in good faith. Had any person examined the mortgage of record, they would have seen that it only authorized the mortgagor to retain the possession until its maturity.

Again, a *bona fide* purchaser, without notice, from the purchaser at such a foreclosure sale, is not required to inquire whether the sale has been regular, but must be protected. If required to do so, it would operate as a great hindrance to the free circulation of personal property, as there is no record evidence of the foreclosure as in mortgages on real estate, and hence a purchaser could not usually ascertain whether the mortgage was or not legally foreclosed. If irregular, the mortgagor or his assigns, or creditors, should take steps to enforce their liens, or to make a redemption, before the rights of innocent purchasers have intervened, or be barred in their rights.

It is urged that the court below should have rendered a decree against Crane for the balance of the debt due to plaintiff in error. If, after failing to establish a right to equitable relief against the property, he was entitled to such a decree, having, as he had, a complete remedy at law, he should have asked for the decree. Such relief was not prayed for in the bill, and to have received it he should have asked for it under the prayer. If entitled to receive it, and he had asked for it, the court below would have granted it. The decree of the court below is affirmed.

*Decree affirmed.*