67   122
33a 511
67   123
183   513

## WILLIAM STEVENSON

*v.*

## JOHN MATHERS.

1. CHANCERY—*sworn answer as evidence.* Where an answer to a bill in chancery is required under oath, so far as it is responsive to the allegations of the bill, it becomes evidence for the defendant, and requires the testimony of two witnesses to overcome it, or of one witness and corroborating circumstances equal to another.

2. A party can not file a bill, call for and receive an answer under oath, and evade the effect of the answer by filing what is called an amended

bill, substantially the same as the original, dispensing with a sworn answer, and receive a copy of the previous answer without oath. To allow this, would be to permit him to do indirectly what he could not do directly.

3. PARTNERSHIP—*payment of share of capital stock condition to right to share in proceeds.* Where the articles of an association, formed for speculation in real estate, required the ownership of $2000 of the capital stock as a condition to membership, it seems that a party who has failed to pay in such amount on calls, is not entitled to maintain a bill for an account of profits and for partition of lands unsold, especially when he owes the company more than the amount of calls paid in by him.

4. SALE OF LAND—*vendor must perform his agreement to discharge incumbrances.* Where the complainant, having title with another to a farm, subject to a heavy incumbrance for purchase money, with such other party sold the same to a land company for the sum it cost them, the vendors agreeing to discharge the incumbrance, and being unable to do so the complainant agreed with the company to pay $1278 which he owed the company on calls of stock, in a few days, and to discharge the balance of the incumbrance, except $5000 thereof, which the company were to assume, and the company accepted a deed under the mistaken belief that he had paid said sum of $1278 on the incumbrance, and paid him and the other owner $1394.80 on the land, and the land was afterwards sold under the incumbrance and passed redemption: *Held,* that the complainant having failed to discharge the incumbrance, except as to $5000, could not enforce the contract against the company; that the acceptance of the deed under a misapprehension of fact could not bind the company to complete the contract; and that it was not bound to apply the moneys due the complainant and the other owner in discharge of the incumbrance or in redemption from the sale thereunder.

5. PARTIES IN CHANCERY—*enforcing sale of land by vendor.* Where the complainant seeks by bill in chancery to enforce payment of the purchase money of land sold by him and another, and such other vendor is dead, the representatives of such deceased vendor are necessary parties, as they are equally interested in the transaction.

6. SAME—*defendants—members of association.* In a bill by a member of an association formed for speculating in real estate, to recover for land sold the company and conveyed to a trustee of the company, and for an account, and partition of the lands unsold remaining in the name of the trustee, the several other members of the company are necessary parties defendant.

7. AGENCY. A trustee or agent of a voluntary association for speculating in lands, in whose name the titles are taken for convenience, can not be held individually liable whilst acting for the company within the scope of his authority, his acts, in that respect, being theirs and not his individually.

WRIT OF ERROR to the Circuit Court of Douglas county; the Hon. JAMES STEELE, Judge, presiding.

Messrs. HENRY, REED & PENNELL, for the plaintiff in error.

Mr. WILLIAM THOMAS, for the defendant in error.

Mr. JUSTICE WALKER delivered the opinion of the Court:

This was a bill in chancery, filed by plaintiff in error, and Thomas J. Buntain, in the Douglas circuit court, against defendant in error, for the purpose of obtaining a settlement of partnership accounts, and a partition of certain real estate. An amended bill was filed on the 5th of August, 1857, in which complainant Stevenson alleges, that he and some sixteen other persons entered into articles of association and formed a partnership in buying and selling real estate, under the firm name of the "Central Illinois Land Company." It was provided that there should be no more than twenty members of the company, with a capital of not more than forty thousand dollars, divided into shares of $1000 each; and the ownership of two shares should constitute the holder a member.

That lands were purchased, for which large sums were to be paid at different times. The lands were to be conveyed to Benjamin Newman, who was appointed trustee to buy and sell lands for the company; that he purchased a large quantity of lands; that on the 23d day of December, 1857, complainant Stevenson and G. Y. Shirley agreed to sell to the company, and convey to Newman, several tracts of land they had purchased of one Thomas J. Buntain, and had executed a mortgage thereon to secure the payment of the purchase money; that Newman, as the agent of the company, agreed to pay the purchase money and they were to convey to him; and, in pursuance to the agreement, the land company paid thereon the sum of $1433, when the vendors executed the deed to Newman, and that he and the company knew of the mortgage

on the land; and it was expressly agreed that Newman should apply for and obtain an extension of time and pay the mortgage.

It is alleged, that the land purchased of Buntain and sold to the company was improved and cultivated, and Newman leased it at a rental of $400, annually, for a long space of time; that Stevenson paid on that purchase, for the benefit of the company, $2646.17 of his own means, which he claims should be applied to pay the balance due on his stock, and the balance should be paid him on stating the account and partition of the lands.

It is also alleged, that in 1858, Buntain filed a bill and foreclosed the mortgage on the lands, which were sold for the aggregate sum of $4880, and purchased by the bank of the State of Indiana, and no redemption having been made a deed was executed by the master; that complainant and Shirley were prevented from redeeming by the failure of the land company to pay them the money on the purchase; that the purchase money was never paid by the company or Newman, but it is still due; that they should have redeemed, but never did; that Newman remained in possession until the deed was made by the master to the purchaser.

That afterward, defendant in error became the trustee, and he could have redeemed; that in September, 1858, Buntain recovered a judgment against complainant and Shirley for $7943.20, the balance of the purchase money, and a tract of land was sold to one Warren for three hundred dollars thereunder, and no redemption was had, and the sheriff executed a deed therefor; and the company applied to Warren for, and obtained an extension of time to redeem the same until the time when the last payment to Shirley and complainant fell due, but the company failed to redeem; that Shirley and complainant had no property subject to levy and sale on execution; that Newman, as trustee, conveyed the lands owned by the company to the members thereof, in October, 1858; that

Crane and Vance released their interest therein to the company, and Jesse Newman conveyed his interest in the capital stock of the company to Matt Stacey; that on the 1st of January, 1859, all, or at least a large portion of the members of the company, conveyed to defendant in error, as trustee.

Complainant claims that he was entitled to two shares in the company, and two undivided twentieths of the lands, and that when Newman conveyed to the members of the company, complainant's name should have been inserted as a grantee, but it was omitted; that defendant in error had reconveyed a portion of the lands for a nominal consideration; that defendant in error conveyed one tract of land to Keys, for less than its value, and Keys soon after reconveyed it to him, and he had laid it off in town lots. These conveyances are charged to be fraudulent; that had the capital stock been paid out for the lands purchased, it would have been more than sufficient to have paid all of the purchase money on them, but, by a failure of some of the members to pay their stock, some of the land had to be sacrificed.

Complainant alleges that he had paid to the company a sufficient sum to pay for his shares of stock; that there is still a large number of town lots unsold, and other real estate remaining unsold of the company. The bill prays that Mathers be made a party defendant; that he make discovery and account, and that a partition be made of the lands, and complainant's interest therein be set off to him, and for his share of moneys belonging to the company. The amended bill expressly waives an answer under oath, whilst the original bill called for and the answer was under oath.

Defendant filed an answer to the amended bill and swore to it, notwithstanding the oath was waived by the bill. It admits the formation of the land company and all of the purchases, except that from Buntain, substantially as charged. He states that complainant and Shirley applied to Newman, the trustee, to purchase of them the Buntain tract, and the matter was

referred to the company, when a resolution was adopted, author-
izing him to purchase, at the price they had agreed to pay,
upon the longest time that could be procured, but no por-
tion should be paid before the 17th of September, 1858. This
resolution was adopted on the 17th day of December, 1857;
that Newman purchased, and agreed to pay not more than
$2500 by the 17th of September, 1858, and the balance by
the 1st of January, 1860. No deeds or notes were taken at
the time; but it is denied that the company made any con-
tract, whatever, with Buntain, or agreed to pay him any sum
of money; that whilst the company were to pay complainant
and Shirley the same they were to pay Buntain, still the times
of payment were different.

It is further insisted, that the purchase money was due
from complainant and Shirley to Buntain, and that they agreed
on the payment of $2500, to convey the land to the company
by deed, free from all incumbrances, which they were unable to
do, as it was mortgaged to Buntain. He denies that they
purchased the land in trust for the company, but insists the
purchase was made without their consent, and long before it
was organized; that complainant, in December, 1858, con-
veyed the land to the company. He alleges, that after Bun-
tain recovered his judgment against complainant and Shirley,
he notified them that the company would not pay them unless
they removed the incumbrance, and if sold, the last pay-
ment would not fall due until the time for a redemption
expired, and defendant proposed if complainant and Shirley
would pay their call, on stock, that the company would pay
$2500 on their indebtedness to Buntain, to which they agreed,
but complainant did not, and could not, make such payment,
and defendant declined to pay Buntain. He says the call due
from complainant was $1278.99; that afterwards, on the im-
portunities of complainant, and upon his solemn promise that
in a few days he would pay his calls and other indebtedness
amounting to $1278, and apply the same on the judgment in
favor of Buntain, and would pay off all of the judgment

except $5000 thereof, which had been assigned to the Indiana Bank, and that he and Shirley would execute a deed to the company for the Buntain farm free from all incumbrance, defendant agreed to assume the bank claim, and upon the performance of their agreement he would accept a deed, which he afterwards did, under the belief that the $1278.99 had been paid on the judgment; that he had previously paid to complainant and Shirley $1394.80. He alleges that they had failed to comply with their promises, and failed to keep and perform the condition upon which the deed was received and upon which the $1394.80 was paid them.

Defendant denies that the company applied to Warren for an extension of time to redeem a tract of land as alleged in the bill. He denies that the company received enough of rents to pay taxes and repairs.

In regard to the purchase of this land called the Buntain farm, the allegations of the original bill contained, substantially, the same allegations as those in the amended bill; and the answer of defendant in error is almost identical in regard to this transaction to both bills. The first answer was called for under oath and was so made, and so far as it was responsive to the allegations of the bill, it became evidence, and required the testimony of two witnesses to overcome it, or of one witness and corroborating circumstances equal to another. This portion of the answer was responsive to the original bill. It was in reference to the terms and conditions of the purchase, and the version there given by defendant in error is not overcome by the evidence of two witnesses or its equivalent. He, in his answer, states, that the company did not purchase of Buntain, nor did they agree to pay him; and this is not disproved.

Again, he alleges that the time for the payments to be made by the company were of a later date than the payments to be made by complainant and Shirley. This is not disproved. He also states, that the condition upon which he was to pay the $1394.80 was, that plaintiff in error should

9—67TH ILL.

pay $1278.99 on the judgment and satisfy all of it but $5000, which had been assigned to the bank; that he made the payment, and subsequently received the deed under the conviction that plaintiff in error had paid the $1278.99 on the judgment when he had not so done. This is not disproved. When they sold and agreed to convey the land free from incumbrances, it was their duty to do so before they could compel the company to carry out their contract. When they sold and prolonged the time of payment beyond the time when their payments fell due, they must have sold with the expectation of removing the incumbrances with means derived from other sources than from the company. It did not become their duty to pay off the incumbrances with the means they had agreed to pay complainant and Shirley, especially as the money was not then due.

When the new arrangement was made, its performance by the company depended upon the condition that complainant and Shirley would pay the $1278.99 on the judgment and satisfy all of it but the $5000 assigned the bank, and it is not pretended that such payments were ever made; nor does the fact that defendant in error received the deed under a mistake, and with their covenants, change the rights of the parties. The purchase was not made by them of Buntain for the use of the company, and they failed to comply with the condition upon which the company agreed to pay the balance of the judgment.

But it might be insisted, that as, by the amended bill, the oath of defendant was expressly waived, the rule applied as to proof under sworn answers should not apply. The trial was, of course, under the bill, amended bill, answers and proofs in the case. A party can not file a bill, call for and receive an answer under oath, and evade the effect of the answer by filing what is called an amended bill, substantially the same as the original, dispensing with a sworn answer, and receive a copy of the previous answer without the jurat. To do so would violate a maxim of the law that that which can

not be done directly is prohibited from being done by indirection. It would be a sheer evasion to permit it to be done. See *Wylder* v. *Crane*, 53 Ill. 490; *Hill Ch. Prac.* 170.

The first answer denies the case made by the bill, and it has not been overcome by evidence. If plaintiff in error relies upon collecting the money that was to be paid to him and Shirley, then the representatives of Shirley should have been made parties, as they were equally interested in the transaction. But we have seen that the condition upon which the money was to be paid them was never performed, and hence he nor they can claim it of defendant in error. They did not perform their contract, and therefore no one is liable to pay them the purchase money; but, even had a cause of action been shown, the bill would have been defective for want of parties defendant. All that defendant in error did was as agent and trustee for the company, and had there been a liability shown it would have been against the members who composed the company, and they would have been required to contribute to make up the fund to meet the liability. The trustee and agent could not be held individually responsible whilst acting for the company and within the scope of his authority. Such acts were theirs and not his individually.

Plaintiff in error has failed to show that the company owed him anything, but on the contrary he was indebted to the company over and above the amount he paid on stock. If the evidence of the trustees is to be credited, then plaintiff in error is liable to the company for the money he obtained by sale of their notes given for the purchase of the Sanford land. They say it was purchased of plaintiff in error on the assurance that it was free from incumbrance, when it was largely burthened with liens, so much so that it was useless to discharge them, and that he sold the notes before maturity and the company were compelled to pay them. If this is true, and it seems to be uncontradicted, then he would be required to account for the money thus received.

A full and careful consideration of the evidence in the case entirely fails to show that the plaintiff in error has any right to relief; and the court below decided properly in dismissing the bill, and the decree must be affirmed.

*Decree affirmed.*