The Springfield Company v. Ely.—Syllabus.

THE SPRINGFIELD COMPANY, A CORPORATION UNDER THE
LAWS OF FLORIDA, APPELLANT, VS. MARY C. ELY, APPEL-
LEE.

1. Under Section 1, Article XI, Constitution of 1885, the consent
   of a married woman to be effective to render her separate
   statutory property liable for her husband's debt must be
   in writing, and must be executed according to the law re-
   specting conveyances by married women appropriate for
   the conveyance of the class of property to which the con-
   sent relates.

2. A married woman gave her husband written authority to
   deposit as collateral security for a certain specified debt
   to be contracted by her husband for his benefit, certain
   certificates of stock which were her separate statutory
   property, and the husband in pursuance of such authority
   delivered such certificates and pledged same to the credi-
   tor as collateral security for the payment of such debt by
   an instrument in writing executed by him. Subsequently
   the husband and wife were divorced, and thereafter the
   wife and the creditor by mutual consent substituted in
   lieu of the certificates so deposited and pledged other cer-
   tificates of stock belonging to her. Held, that the wife had
   given her consent to render liable for her husband's debt
   the stock originally pledged in accordance with the con-
   stitution, and that the creditor was entitled to subject
   the substitued certificates of stock to payment of his debt.

3. The fact that a party authorized to pledge another's cer-
   tificates of stock for payment of a specific debt due by him
   also pledges same for other debts due by him to the credi-
   tor does not affect the validity of the pledge for the au-
   thorized debt.

4. A creditor seeking in equity to subject to a debt due him
   by one party, property of another pledged for its payment,
   is not required to make the debtor a party defendant,
   where the latter is beyond the jurisdiction of the court,

The Springfield Company v. Ely.—Statement of Case.

.. not amenable to its process, and where no relief is prayed against him.

5. Where a sworn answer has been filed in response to a demand made therefor in an original bill, such bill can not subsequently be amended, at least as to the same matters set up in the original bill, so as to waive a sworn answer.

.6. The fact that an amended bill undertakes to waive an answer under oath, while the original bill required a sworn answer, is not proper ground for demurrer. The proper remedy is by motion to strike the attempted waiver if the amended bill has been filed, or the court may require such waiver to be stricken before permitting the amended bill to be filed.

Appeal from the Circuit Court for Duval County.

STATEMENT.

On June 19th, 1897, the appellant filed its original bill of complaint against the appellee in the Circuit Court of Duval county, to which appellee filed her answer incorporating therein certain specific grounds of demurrer. There was a separate preliminary hearing of the cause upon the bill and grounds of deumrrer incorporated in the answer, whereupon the court made an order adjudging that the demurrer be sustained, and at the same time an order was made giving the complainant leave to file the amended bill, as it might be advised. The original bill required answer under oath, but the amended bill tendered expressly waived a sworn answer. Defendant objected to so much of the amended bill as waived answer under oath on the ground that the original bill required a sworn answer and such an answer had been filed, but the court overruled the objection and permitted the amended bill to be filed as tendered.

The amended bill alleged in substance that on the nineteenth day of November, 1892, the defendant Mary C. Ely was then and there the lawful wife of one Henry S. Ely, and was living with her said husband in Jacksonville, Florida; that on or about said date the said Henry S. Ely proposed to the Southern Savings & Trust Company, a corporation engaged in banking business in Jacksonville, to give his note to said corporation for $5,865.94 in consideration of the transfer to him of certain notes and drafts then held by it, and its retaining him in employment as its secretary and assistant treasurer, and further proposed to secure said note by pledging to said corporation certificates Nos. 31 and 32 for fifteen shares each, and Nos. 38, 39 and 66 for ten shares each, of the capital stock of the said Southern Savings & Trust Company; that the said proposition was then and there accepted and thereupon Henry S. Ely made, executed and delivered to said corporation an instrument in writing in and by which he promised to pay on demand to said corporation, or order, said sum of $5,865.94; and in and by said instrument of writing he mortgaged and pledged to said corporation to secure the said indebtedness, the certificates of stock before mentioned. Said instrument was made a part of the bill, and is as follows:

"$5865.94.                    B. D. 662 Due 11-19-92.
          Jacksonville, Florida, Nov. 19th, 1892.

On demand, after date, for value received, I promise to pay the Southern Savings & Trust Company, or order, at said bank, fifty-eight hundred and sixty-five 94,100 dollars having deposited with said bank, as collateral sceurity for payment of this or any other liability or lia-

21 S. C.

bilities of ———— to said bank due or to become due, or which may be hereafter contracted: the following property viz, certificates No. 31 & 32 for 15 shares each, and certificates No. 35, 38, 39 and 66 for ten shares each of the capital stock of the So. Savings & Trust Co., with full power and authority to said bank to sell, assign, transfer and deliver the whole. or any part thereof, on any substitutes therefor, or any additions thereto, at any Broker's Board, or at public or private sale, at the option of said bank, or its president or treasurer or its or their or either of their assigns on the non-performance of this promise, or the non-payment of any of the liabilities above mentioned or at any time or times therefor, without advertisement or notice, which are hereby expressly waived; and upon such sale the holder hereof may purchase the whole or any part of such securities discharged from any right of exemption.

It is also agreed that the present value of securities herewith referred to is $7000.00 and that if there should be any change or depreciation in market or other value of the same prior to maturity of this note, the undersigned shall furnish, upon demand made personally or by mail or telegraph to the address of the undersigned given below such additional security as will be satisfactory to said bank, or its prsident or treasurer, and in case of failure so to do, forthwith then in that case the said obligation shall be due and payable, and the whole or any part or parts of said securities may be sold as hereinbefore provided, and after deducting all legal or other costs and expenses for collection, sale and delivery, to apply the residue of the proceeds of such sale or sales so to be made, to pay any, either or all of said liabilities to said bank, or its assigns, as its president or treasurer,

or its or their, or either of their assigns shall deem proper, returning the overplus to the undersigned.

And the undersigned agrees to be and remain liable to the holder hereof for any deficiency.

HENRY S. ELY.

Address ................

Endorsed. Pay to the Springfield-Co., or order.

Southern Savings & Trust Co.

By

S. B. HUBBARD,

Its President.

It was further alleged that the stock so mortgaged and pledged stood in the name of Henry S. Ely, Trustee, but the defendant Mary C. Ely was the beneficial owner thereof, it being, as complainant was informed, then the separate property of the said Mary C. Ely, under the constitution and laws of Florida; that upon said nineteenth day of November, 1892, she executed an instrument in writing in and by which she consented that said Henry S. Ely might use said certificates of stock as collateral security for his note for $5,865.94, and said instrument in writing was delivered to said Southern Savings & Trust Company with the writing above mentioned and as a part of the transaction. Said instrument was made a part of the bill and is as follows:

"Jacksonville, Fla., Nov. 19th, 1892.

I hereby authorize Henry S. Ely to deposit as collateral security for a note of $5865.94 payable on demand, certificates No.s 31 for fifteen shares, No. 32 for fifteen shares, No. 35 for ten shares, No. 38 for ten shares, No. 39 for ten shares and No. 66 for ten shares, respectively of the capital stock of the Southern Savings & Trust

Company. Said shares standing in the name of Henry S. Ely Trustee, but I being the beneficiary thereof.

MARY C. ELY."

It was further alleged that upon the delivery of said instruments, denominated respectively, Exhibits "A" and "B" to said Southern Savings & Trust Company it did transfer and deliver to said Henry S. Ely said notes and drafts and did retain said Ely in its employ as secretary and assistant treasurer; that afterwards, to-wit: on the twenty-eighth of December, 1894, for a valuable consideration said Exhibit "A" was assigned to complainant (the Springfield Company), and said Exhibits "A" and "B" delivered to it, and that it was the sole owner therof.

The bill further alleged that on February 26th, 1894, the bonds of matrimony previsously existing between Henry S. and Mary C. Ely were dissolved by the decree of the Circuit Court of Duval county; that afterwards, to-wit: on March 27th, 1895, under and in pursuance of an agreement entered into between complainant, defendant, and the Southern Savings & Trust Company, the certificates of stock mentioned in Exhibits "A" and "B" were surrendered up and canceled on the books of the corporation, and in lieu thereof there was issued to and in the name of the said Mary C. Ely by the said Southern Savings & Trust Company certificate No. 34 for twenty-three shares of its capital stock, and the said Springfield Company issued to and in the name of said Mary C. Ely certificate No. 117 for forty-seven shares of its capital stock, and thereupon the said Mary C. Ely executed assignments in blank endorsed on the back of each of said certificates and delivered the same to the proper officers of your orator, to be held in lieu of the

certificates of stock mentioned in Exhibit "A" and in Exhibit "B" as surety for the indebtedness mentioned, in place of the surrendered certificates of stock. Copies of the certificates with their endorsmeents were made a part of the bill.

It was then alleged that nothing had ever been paid on the indebtedness mentioned in and evidenced by Exhibit "A"; that there had been a demand for payment on May 26th, 1897, at the place where Exhibit "A" was payable; and that Henry S. Ely was beyond the limits of the State of Florida, and out of the jurisdiction of the court, and could not be reached by its process.

The bill prayed that the stock might be sold to satisfy the amount of indebtedness found to be due upon an accounting.

Defendant demurred to the amended bill, assigning substantially the following grounds of demurrer:    (1) That complainant had not made or stated a case entitling it to the relief prayed, or any relief; (2) that Henry S. Ely was a necessary party; (3) that the original pledge was not evidenced by an instrument in writing, executed according to the law respecting conveyances by married women; (4) that Henry S. Ely in pledging the stock exceeded the authority given him by the terms of the instrument executed by said Mary C. Ely; (5) that the lien sought to be enforced against the substituted certificate was the lien sought to be created on the original certificates, which was without force or effect; (6) that the original certificates or copies thereof were not filed with the bill; (7) that there was no consideration for the pledge of March 27th, 1895; (8) that complainant had no valid lien or equity to be enforced; (9) that the amended bill sought to waive answer under oath,

after an answer under oath had been put in to the original bill. Upon hearing of the demurrer it was sustained and the bill dismissed, and from that decree the appeal is prosecuted.

The other facts are stated in the opinion.

*W. B. Young,* for Appellant.

*A. W. Cockrell & Son,* for Appellee.

PER CURIAM (*after stating the facts.*)

This cause was referred by the court to its commissioners for investigation who recommend that the judgment of the Circuit Court be reversed.

I. The first, third, fifth, seventh and eighth grounds of demurrer may be considered together, and they raise the question whether under the facts stated in the bill the complainant is entitled to subject to the payment of the debt due it by Henry S. Ely, the certificates of stock issued to defendant March 27th, 1895. If the complainant possessed the right in equity to subject to the payment of that debt the stock in the Southern Savings & Trust Company which had been attempted to be pledged to secure such debt on November 19, 1892, it is not, and we think can not be successfully denied, that under the allegations of the bill the complainant is entitled to subject to the payment of that debt, the certificates of stock issued March 27, 1895, in substitution for the cretificates originally held, which were assigned in blank and delivered by Mary C. Ely then an unmarried woman, to com-

plainant to be held in lieu of such original certificates
and in their stead. The principal contention made here
under these grounds of the demurrer is that on November
19, 1892, Mary C. Ely was the wife of the debtor Henry S.
Ely; that the certificates of stock then attempted to be
pledged were her separate statutory property, and that
under section 1 Article XI, constitution of 1885, the
wife's prpoerty could not be made liable for her hus-
band's debt except in pursuance of her consent given by
some instrument in writing executed and acknowledged
according to the law respecting conveyances of real prop-
erty by married women, and that the instrument in writ-
ing executed by Mary C. Ely on that date not being under
seal, or attested by witnesses or acknowledged, or exe-
cuted by her husband, was insufficient under that section
of the constitution to bind her separate statutory prop-
erty—the certificates of stock—for payment of her hus-
band's debt. That section reads as folows: "All prop-
erty, real and personal, of a wife owned by her before
marriage or lawfully acquired afterward by gift, devise,
bequest, descent or purchase, shall be her separate prop-
erty, and the same shall not be liable for the debts of
her husband without her consent given by some instru-
ment in writing executed according to the law respect-
ing conveyances by married women." This section does
not in terms require the instrument in writing to be a
deed or mortgage, nor does it require the husband to join
in its execution or give his consent to its execution by
the wife, nor does it in terms require the instrument to
be sealed, witnessed or acknowledged. It simply requires
the wife's consent to be given by some instrument in
writing executed according to law respecting conveyances
by married women. At the time of the adoption of the

constitution married women could convey their separate statatory real property by deed under seal, attested and acknowledged as required by the statute, provided the husband joined in such conveyance. The only provision of law specially applicable to the conveyance of married women's separate statutory *personal* property was that the husband and wife should join in all sales, transfers and conveyances of the property of the wife. No separate acknowledgment of the wife was required, nor was the conveyance required to be witnessed, or sealed, or even to be in writing, unless perhaps in cases where such formalities might be required by law for conveyances of that species of personal property by persons generally. In Tunno v. Robert, 16 Fla. 738, it was held that where the wife conveyed her separate statutory personal property by a written instrument, the statute did not require the husand to join in the execution of that written instrument, but that his assent in writing to the transfer by the wife was sufficient. The statute there construed is still in force. The section of the constitution under consideration is framed with reference to the laws respecting conveyances by married women of personal as well as real property, for both classes of property are expressly mentioned. The word conveyance is used in a broad sense including conveyances of both real and personal property. The convention in adopting and the people in ratifying that instrument, must be assumed, had in mind the fact that certain formalities were required for the conveyance of married women's real property, that were not required for the conveyance of their personal property, and that the legislature possessed the power to change or alter the forms of and requisites for the conveyance of either or both at pleasure. The section

under consideration though dealing with both classes of
property and with the liability of both classes of prop-
erty for the husband's debts simply requires the consent
of the wife to be given by some instrument in writing—
the instrument to be executed according to the law re-
specting conveyances by married women, whatever that
law should be at the time the consent is given.    The
proper interpretation of the constitution requires us to
hold that the consent of the wife to be effective to render
liable her separate statutory property to her husband's
debts *must be in writing*, and must be executed accord-
ing to the law respecting conveyances by married women
appropriate to the conveyance of the class of property
to which the consent relates, and that as to the  certifi-
cates of stock owned by Mary C. Ely on November 19,
1892, her written consent was not required by  the  con-
stitution or by any law then in force to be  sealed,  at-
tested or acknowledged to render it effective.    It is in-
sisted, however, that her husband did not execute the
written consent given by Mary C. Ely, and that this was
required by the statute relating to conveyances of per-
sonal property by married women.   Whether the consti-
tution contemplates that the husband shall join in the
execution of the written consent of the wife in order
that such consent may be "executed" according to the
law respecting conveyances by married  women,   even
where the statute requires the husband to  join in  the
execution of his wife's conveyances, is a question which
we shall not now determine, but if it does, it certainly con-
templates that such joinder shall be in such form or
manner only as will satisfy the statute, and as the par-
ties in the present case have submitted it upon the theory
that the husband's joinder is necessary, we shall consider

it from that standpoint. As already pointed out this court in Tunno v. Robert, *supra*, has held that the husband in order to "join in the sale, transfer or conveyance" of his wife's property, within the meaning of the statute need not execute the written transfer or conveyance with her when it relates to personal property, but may evidence his assent to her conveyance by a separate written instrument. This was done in the present case, by his written pledge of the stock under the authority given by the written consent of the wife. We are, therefore, of opinion that the written instruments executed by defendant and her husband were sufficient under the constitution to render liable for Henry S. Ely's debt, the original stock pledged to secure it, and that the substituted stock is likewise liable for that debt. It is claimed, however, that Henry S. Ely exceeded his authority in pledging the original stock in that he pledged it not only for the $5,865.94 debt mentioned in the written consent of his wife, but also for the payment of any other liability of Henry S. Ely to the bank due or to become due or thereafter contracted. If complainant was attempting to enforce liability for any debt other than the one specifically mentioned in the written consent of defendant the question suggested would become very material, but such is not the case. The fact that Henry S. Ely exceeded his authority by pledging the stock for other debts in addition to the one he was specifically authorized to pledge it for does not in any manner affect the right to charge the stock for the payment of the debt he was authorized to and did pledge it for.

II. Another ground of the demurrer insists that Henry S. Ely is a necessary party defendant. The property sought to be charged now stands in the name of the de-

fendant and not in the name of Henry S. Ely, trustee, and before this property was substituted for that originally pledged Henry S. Ely had ceased to be the husband of the defendant. He is alleged to be beyond the jurisdiction of the court and not amenable to its process, and no relief is pryaed against him. While he might be a proper party defendant, he is not an indispensable one. It is not essential that a judgment be first recovered against him on the debt he owes, in order to subject to payment of that debt the stock pledged, because his failure to pay the debt gave complainant a right to subject it immediately. Under these circumstances Henry S. Ely being beyond the reach of the process of the court, complainant was not required to make him a party in order to obtain relief by subjecting defendant's certificates of stock to payment of the debt for which it is liable. Story's Eq. Pl'd'g. Sec. 78 *et seq.*

III. It is not insisted in argument by appellee that the failure to file with the bill the original certificates of stock or copies thereof, made the basis of one ground of the demurrer renders the bill demurrable, and the court thinks it does not.

IV. The fact that the amended bill waived an answer under oath while the original bill required a sworn answer is not a proper ground of demurrer. Where, however, a sworn answer has been filed in response to the demand made therefor in an original bill, such bill can not properly be amended at least as to the same matters set up in the original bill so as to waive a sworn answer, and upon motion made to strike the attempted waiver from such an amended bill the court should grant it, or it may require such waiver in a proposed amended bill of that character to be stricken before permitting it to be filed.

Burras v. Looker, 4 Paige's Chy. 227; Throckmorton v.
Throckmorton, 86 Va. 768, 11 S. E. Rep. 289; Walker v.
Campbell, 5 Lea, 354; Wylder v. Crane, 53 Ill. 490; Bing-
ham v. Yeomans, 10 Cush. 58.

The decree of the Circuit Court is reversed with direc-
tions to overrule the demurrer and for such further pro-
ceedings as may be consistent with equity and this opin-
ion.