ALLEN, Acting Chief Judge.
Appellant, plaintiff in an action to “foreclose stock pledged as security for notes,” appeals an order dismissing his complaint with leave to amend.
Appellant instituted suit by complaint in two counts. The first count alleged that the defendants Silvester, in consideration *777 of loans to them and to the corporate defendant, had executed and delivered two promissory notes in the amount of $100,000 each, which notes, however, represented the same $100,000 obligation. Copies of the notes, naming George B. Geller as payee, were attached to the complaint. The first count then alleged:
“4. That for the purpose of securing the payment of said notes the defendant, ARTHUR W. SILVESTER, did duly deposit and deliver, in pledge to said payee and subsequent holders of said notes 237,500 shares of the capital stock of Volusia Jai-Alai, Inc., a corporation duly organized and existing under the laws of the State of Florida, said stock being evidenced by certificate Nos. 103, 163 and 165, which said certificates so evidencing said stock together with assignments separate from certificate duly executed by the said defendant, ARTHUR W. SIL-VESTER, and attached to said stock certificate, were duly deposited with and delivered to said payee in pledge to secure the payment of the said indebt-ednesses hereinabove set forth.
“5. That thereafter and prior to the commencement of this action said payee did duly endorse and deliver said promissory notes hereinabove set forth to the plaintiff; that said endorsement was in writing and was in the words and figures following, to-wit:
'Pay to the order of Richard K. Fink, as Trustee. Dated: This 13th day of December, 1963’;
that said payee did also at the time of delivery and endorsement of said notes to the plaintiff duly transfer, deliver and pledge to plaintiff as security for the payment of the said promissory notes hereinabove set forth the said shares of the capital stock theretofore pledged by the said defendant, ARTHUR W. SILVESTER, for the purpose of securing payment of said notes as hereinabove alleged; that said certificates of stock, together with their executed assignments separate from certificate, so evidencing the ownership of said stock are now in the possession of the plaintiff as security for the payment of said notes now held by the plaintiff and plaintiff has a lien upon the said stock and the said certificates to secure the payment of the said notes according to the tenor thereof, including the attorney’s fees provided by said notes to be paid.”
This count concluded with an allegation that the notes were in default and prayed for a judgment for $100,000, declaration of plaintiff’s lien upon the stock and, if necessary, foreclosure.
The second count alleged that the individual defendants executed and delivered notes for $100,000 and $50,000 payable to Agnes Davis and that the corporate defendant executed and delivered a note for $15,000 payable to Joseph Davis, which notes together represented an indebtedness of $65,000 for loans to the individual and corporate defendants. (Copies of the notes were appended.) This count continued with allegations identical to that hereinbefore quoted except that the “pledged” stock involved was 130,000 shares of the same corporation represented by certificates numbered 102 and 105. A judgment for $65,000 and foreclosure was sought.
The order appealed recites:
“This cause was persented on Defendants’ Motion to Dismiss Plaintiff’s Complaint. In the present status of the Complaint, the Court cannot clearly ascertain that there is a cause of action for foreclosure of a pledge of stock, as the pledge itself does not appear in any instruments, and since the parties to the pledge appear to be indefinite, it is thereupon [ordered that the complaint be dismissed, etc.]”
While the facts set forth in the two counts of the complaint were confusing, we must *778 disagree with the able trial judge in his conclusion that the complaint did not state a cause of action.
The appellees, in their brief, contend that a pledge that will result in a sale or foreclosure comes within the purview of F.S.A. § 685.02 and there must be some writing to indicate the contract of pledge. Section 685.02 provides, in effect, that when any stock in a corporation, contract, etc., shall be pledged or deposited as security for the payment of any indebtedness, the person or corporation to whom the same may be pledged, hypothecated or transferred, and their assigns, may sell the same in such manner and on such terms as may be agreed upon in writing. This statute does not apply to a foreclosure of a pledge or other collateral securities.
' A case very similar to the instant one is Gables Racing Ass’n v. Persky, 1934, 116 Fla. 77, 156 So. 392, in which our Supreme Court (p. 394) said:
“The controlling question presented by this appeal is the right of a pledgee to foreclose a mortgage deposited with him as collateral security for the payment of a debt due to him by the mortgagee, and, if such right exists, may his assignee, who takes the collateral security to secure the payment of a debt due to him by the pledgee, maintain his bill to enforce the lien upon the maturity and non-payment of both debts.
“This question we answer in the affirmative.
“The principle pervading a transaction involving a pledge of property as security for the payment of a debt is that the transaction vests in the pledgee the right to the property so far as is nedessary to secure the payment of the debt.
“While a pledgee of commercial paper held as collateral security cannot sell such paper, in the absence of a special power of sale in the contract, he may bring suit thereon, although the debt secured by such pledge is not at the time due, but he has, of course, no right to apply the proceeds to the payment of the debt until after default in the payment of such debt by the pledgor. See 21 R.C.L. p. 668.
* * * # * *
“The remedy provided by statute, section 6931, C.G.L.1927, is not exclusive, as the pledgee may by fore- = closure proceedings enforce the lien of the mortgage to the end that the debt which the mortgage was given to secure may be collected. In such proceeding the pledgor is secured in all his rights, has his day in court, and is protected against any unfair or unjust disposition of his property, and secures an accounting of the proceeds of the sale to his debt.”
In the early case of Springfield Co. v. Ely, 1902, 44 Fla. 319, 32 So. 892, in which the factual situation was very similar to the instant case, the Supreme Court, in its opinion (p. 895), said:
“II. Another ground of the demurrer insists that Henry S. Ely is a necessary party defendant. The property sought to be charged now stands in the name of the defendant, and not in the name of Henry S. Ely, trustee, and before this property was substituted for that originally pledged Henry ,S. Ely had ceased to be the husband of the defendant. He is alleged to be beyond the jurisdiction of the court, and not amenable to its process, and no relief is prayed against him. While he might be a proper party defendant, he is not an indispensable one. It is not essential that a judgment be first recovered against him on the debt he owes, in order to subject to payment of that debt the stock pledged, because his failure to pay the debt -gave complainant a right to subj ect it immediately. Under *779 these circumstances, Henry S. Ely being beyond the reach of the process of the court, complainant was not required to make him a party in order to obtain relief by subjecting defendant’s certificates of stock to payment of the debt for which it is liable.
* * * * * *
“III. It is not insisted in argument by appellee that the failure to file with the bill the original certificates of stock or copies thereof, made the basis of one ground of the demurrer, renders the bill demurrable, and the court thinks it does not.”
In 21 Standard Procedure, Pledges, pp. 456, et seq., there appears a succinct statement of the remedies, pleadings, etc., with reference to pledged property, as follows:
“I. Remedies of Pledgee. — A. In ■General. — Upon default of the pledgor, the pledgee may sue on the debt or resort to the appropriate remedy to enforce the security.
“B. Action on the Debt. — 1. Generally. — The acceptance of a pledge as security for a loan does not prevent the pledgee from proceeding personally against the pledgor for his debt, without first restoring, or offering to restore, the pledged property or attempting to enforce the collateral.
“2. Parties. — Parties to instruments pledged, other than the debtor, are neither necessary, nor proper parties defendant.
“3. Pleading. — If payment of the debt is relied upon by the defendant he must allege and prove it.
“Set-Off and Counterclaim.- — A pledgor may set up a conversion of the pledge as a defense to an action on the debt by way of counterclaim or set-off, and if he wishes to rely on such defense he must specially plead it. If there has been an illegal sale defendant may ask as damages the difference between what the property actually sold for and what it would have brought at a valid sale.
“4. Return of Pledged Property Upon Payment of Judgment. The defendant has the right to insist on a return of the pledged property as condition of the payment of a judgment rendered against him, and it is incumbent upon the plaintiff to produce and restore the collateral security or to account satisfactorily for its non-production.
“C. Enforcement of the Security.— 1. Choses in Action. — a. Generally. —Where the security is a chose in action, the pledgee may sue thereon, and he need not first exhaust his other remedies or collaterals. He may ordinarily sue for the entire amount due on the collateral though it exceeds the amount of the debt, but when there are defenses to the obligation which are available only as against the pledgor, the pledgee can recover on the collateral no greater sum than the amount of the loan.
“b. Parties. — The suit may be brought in the name of the pledgee without joining the pledgor, though it is proper to do so.
“c. Pleading. — The plaintiff should set out the pledge agreement where that is necessary to disclose his interest in the note sued on, otherwise no allegations respecting the pledge are necessary.
“2. Foreclosure of the Lien. — a. Generally. — The pledgee, upon default of the pledgor, has a right to sell the pledged property after proper notice to redeem, or he may proceed by foreclosure suit and judicial sale.
“b. Parties. — It is necessary to make parties to a foreclosure suit all *780 those who have a right to pay the debt and redeem the pledge.
“c. Pleading.—The bill or complaint should set out the facts as to the pledge, the ensuing default, and if it is sought to recover expenses incurred in efforts to realize on the collateral the items thereof should be set out.
“Accounting.—As an incident to the foreclosure an accounting may be asked for.
“Cross-Complaint.—The pledgor may cross-complain to redeem the pledged property upon tendering the balance due.
“d. Decree and Sale Thereunder. —A decree in favor of the pledgee usually directs a sale of the property and the application of the proceeds to pay the indebtedness, and the pledgee may purchase the property at the foreclosure sale. The court may render a deficiency judgment against the pledgor.”
In 22 Fla.Jur. Pledge, § 16, it is stated generally that in addition to proceeding personally against the pledgor without selling his pledge, he may enforce his special ownership in the property. It is not necessary that a judgment be first recovered against the debtor on the debt he owes. Nor need the pledgee make him a party to obtain relief. (Springfield Co. v. Ely, 1902, 44 Fla. 319, 32 So. 892.)
Statutory remedies for the sale of pledged properties on default are not exclusive and the pledgee may make a choice between remedies.
In a case of default on the obligation secured, the pledgee may at his option file a bill in the nature of a foreclosure suit and proceed to a judicial sale of the pledged property. (Florida Nat. Bank v. Kassewitz, 1945, 156 Fla. 761, 25 So.2d 271.) An assignee of the pledgee may enforce his lien when the debt is due and unpaid.
Foreclosure proceedings to direct the disposition of collateral may afford a more complete remedy to the pledgee for he thereby obtains an adjudication as to the propriety of his action, and he acquires a right to bid at the sale himself. Such proceedings are also held to be an advantage to the pledgor where he may protect himself against any unfair or unjust disposition of his property. •'
We reverse this action for further proceedings below not inconsistent with this opinion.
SHANNON and ANDREWS, JJ., concur.