E. M. Tunno and M. K. Jessup & Co., Appellants, vs. A. Campbell Robert, Appellee.

1. Where a party has agreed to do certain work, furnish certain materials, and keep certain premises in repair, and he fails fully to perform his

agreement, yet if the work done and materials furnished are of value and are accepted by the other party, he is entitled to recover a *quantum meruit* for his work and a *quantum valebant* for his materials. The owner, however, should be held to pay in damages only so much as will make the sum agreed to be paid good, deducting the loss or damage occasioned by the variation from the contract. After a partial performance the rights under such an agreement may be assigned, unless it involves a personal confidence or there is something of a fiduciary character in the transaction.

2. A mortgagee seeking the foreclosure of a mortgage can have only such debts established as are within the terms of the mortgage.

3. Where a party stipulates to pay a given sum for a defined service and no date is named for payment, the amount becomes due upon the performance of the service contracted for.

4. An agreement by which a party enters upon the land of another, and performs labor and service thereon, is not an agreement by which an estate in land is created. Such an agreement to be performed in five years is a personal contract and is valid if in writing, signed by the party to be charged.

5. Such a contract held by a husband and partially performed, may be assigned to the wife under the Constitution and laws of Florida, in payment for her separate moneys advanced to him, and to the extent that he had a right, she can have a remedy. Such an agreement, not negotiable, is a chose in action to which the wife under our laws can in equity acquire a valid title from the husband.

6. Where such a chose in action is, by the instrument of transfer from the husband to the wife, made payable to the *wife's assigns*, upon an assignment by her such authority from the husband is sufficient evidence of the assent of the husband to her subsequent transfer or assignment of the chose in action to comply with the requirements of the statute regulating transfers of personal property of the wife.

7. The statute which provides that the husband and wife shall join in all sales, transfers and conveyances of the property of the wife, and the real estate of the wife, considered in reference to the personal property of the wife. Thomp. Dig., Sec. 5, 221.

8. The assignee of a chose in action stands in the place of the assignor, subject to all the equities between the parties.

9. The statute of this State (Chap. 1983, Laws,) provides that no person interested in the event of an action, shall be examined as a witness in regard to any transaction or communication between such witness and the person deceased at the time of his examination, against the assignee of such deceased person. In this case the mortgagee being

dead, an interested party cannot be a witness as to any transaction with the mortgagee as against a party deriving by assignment from the mortgagee.

10. " Proof by affidavit to the judge " that the order requiring a defendant resident of another State to appear and answer has been published in the manner and for the time prescribed by law, is one of the requirements of the statute in order to perfect a constructive service. This proof must be made before the judge can grant an order taking the bill for confessed.

Appeal from the Circuit Court for Madison county.

The written assignment by U. M. Robert to his wife, Rachel C. Robert, was endorsed on the mortgage, and after reciting the receipt of moneys and " other valuable considerations," is as follows : " I have assigned, transferred, and set over the within mortgage and land to the said Rachel C. Robert, to her heirs and assigns, hereby transferring all my interest and estate mentioned therein to her heirs and assigns." It was executed May 11, 1870, is witnessed by two witnesses, and recorded May 17, 1870, being acknowledged before the clerk by U. M. Robert for record.

The defence set up, involving the Guilmartin & Co. claim mentioned in the opinion, is to the effect that W. M. Tunno, the son of the complainant, E. M. Tunno, endorsed for U. M. Robert to enable him to obtain supplies from Guilmartin & Co. to run their farm for the year 1871, and that Robert obtained a large amount of supplies from G. & Co., but did not pay for them, but left a balance of $738.18 and interest unpaid, which amount " has been duly paid, or secured to be paid, to said G. & Co." That such endorsement was made in pursuance of an original understanding that it should be recognized as a legitimate set-off or demand against any claim U. M. Robert might have on said mortgage obligation, and that said balance of $738.18 is an equitable set-off against the claim. A member of the firm of G. & Co. testified that W. M. Tunno introduced Mr. U. M. Robert, and the advances were made upon Mr. T.'s guar-

anteeing their payment, and Tunno has paid $350 on the indebtedness; that there is a balance due, and they consider Mr. T. liable for it; they did not know what reason moved Mr. T. to become guarantor for Mr. R.; knew nothing about the mortgage, and had no contract in reference to it.

Chapter 1983 of the Laws of Florida provides that "no person offered as a witness in any court, or before any officer acting judicially, shall be excluded by reason of his interest in the event of the action or proceeding, or because he is a party thereto: *Provided, however,* That no party to such action or proceeding, nor any person interested in the event thereof, nor any person from, through, or under whom any such party or interested person desires [derives] any interest or title by assignment or otherwise, shall be examined as a witness in regard to any transaction or communication between such witness and the person at the time of such examination deceased, insane, or lunatic, against the executor, administrator, heir at law, next of kin, assignee, legatee, divisee, or survivor of such deceased person, or the assignee or committee of such insane person or lunatic; but this prohibition shall not extend to any transaction or communication as to which any such executor, administrator, heir at law, next of kin, assignee, legatee, divisee, survivor, or committeemen shall be examined on his own behalf, or as to which the testimony of such deceased person or lunatic shall be given in evidence."

The other facts are stated in the opinion of the court.

*E. J. Vann* for E. M. Tunno.

*Geo. P. Raney* for Jessup & Co.

*Angus Paterson* for A. C. Robert.

MR. JUSTICE WESTCOTT delivered the opinion of the court.

In this case two appeals are presented by the appellants named from several interlocutory decrees and a final decree for the foreclosure of a mortgage given by appellant E. M. Tunno to U. M. Robert to secure the payment of the following obligation. There is no final decree against M. K. Jessup & Co.:

SAVANNAH, GA., February 10, 1869.

STATE OF GEORGIA, }
  Chatham county. }

WHEREAS, I, Elizabeth M. Tunno, of the State and county mentioned, own and possess a plantation and tract of land in Madison county and State of Florida, known as Orange Hill; and whereas, said plantation is very much out of repair and becoming less valuable every year from trespass and neglect; and whereas, U. M. Robert, of Madison county, Florida, has agreed with me to go upon the said plantation and repair, refit, and pay the taxes and keep it in order; now be it known that I, Elizabeth M. Tunno, in consideration of the premises, hereby obligate myself to the said U. M. Robert to pay him the sum of one thousand five hundred dollars and guarantee the possession of the said plantation for the term of five years, free of rent.

ELIZABETH M. TUNNO.

Under the terms of this instrument, U. M. Robert entered into possession of the plantation.

On the 25th of February, A. D. 1871, an inspection of the premises was had by J. C. McGehee, and he valued the improvements and repairs at $2,250. When examined subsequently as a witness in the cause, these improvements are placed by him at a smaller figure.

The mortgagee used in constructing these repairs and improvements over six hundred dollars of the money of his wife, Rachel C. Robert. In addition to an advance of this

sum, she paid some of the taxes.   In consideration of these sums so paid, the mortgagee executed, on the 11th day of May, A. D. 1870, a formal written assignment and transfer of the mortgage to her, and on the 5th day of February, A. D. 1872, she executed a like formal transfer of the mortgage to her son A. C. Robert, the plaintiff in this case, reciting as a consideration therefor moneys advanced to her by her son, which the evidence shows amounted to about eight hundred dollars.   The agreement to pay fifteen hundred dollars was transferred to him by delivery simply, without any formal assignment.   The transfer was absolute.   Under our statute such a mortgage is transferable, with right of action in the assignee.   This, with the possession of the contract, give the plaintiff a standing in a court of equity.   (30 Mich., 499; 29 Mich., 10.)   The testimony, so far as it relates to the particular defences urged, will be stated as we discuss each question raised.

The first question raised is, whether there is any right of action in the assignee, it being insisted that there was no performance of the contract by the mortgagee or his assignee.   The instrument is an agreement upon the part of U. M. Robert to go upon the plantation and repair, refit, pay the taxes, and keep it in order.   There was, as the testimony discloses, a part-performance by U. M. Robert before he died.   He did enter upon the place and repair and refit it, but the place was not kept in full repair either by him, U. M. Robert, his assignee, or by A. C. Robert, her assignee, and the taxes were not paid during two years of the five years of the term.   We do not think the failure to pay the taxes is an act which should work, under the peculiar circumstances of this case, an absolute forfeiture, thus enabling the mortgagor, after standing by and permitting possession to the end of the term, to avail herself of all the benefits which accrued to her real estate.   A proper

credit can be allowed for this sum in the adjustment of the account.

The rule as to such contracts as this is, that while the party cannot recover the price agreed upon in the contract, yet if the work and materials and the acts done are of any value and benefit to the other party, and are accepted by defendant, the plaintiff may recover on a *quantum meruit* for the work done and on a *quantum valebant* for the materials. The rule is that the owner is entitled to the benefit of the contract, and therefore he should be held to pay in damages only so much as will make the sum agreed to be paid good, deducting the loss or damage occasioned by the variation from the contract. 7 Green, 78; Bull., N. P., 179; 7 East, 479; 6 N. H., 481; 8 Pick., 178; 7 Pick., 181; 5 Ohio, 349–51.

There are conflicts in the cases upon this subject, but we think the correct rule is where the party, as in this case, gets the consideration of a defective execution and accepts it, he should be held to a reasonable charge.

In this case the evidence shows that there was a defective execution, and it was decreed by the court that the sum of four hundred and fifty dollars be credited on the contract, that sum being deemed sufficient to put the plantation in full repair.

Some of the witnesses for the defence swear that in 1874 it was no more out of repair than the generality of places in the country, that the negro-houses were in tolerable condition, &c.; but without reference to this we think, under all the circumstances, the Chancellor was justified in allowing the mortgagee the credit for the large sum. It appears also that the taxes were paid for one year not embraced in the term by the mortgagee or his assignee, and that the mortgagee and his assignees failed to pay the taxes for two years embraced in the term. The decree as rendered fails to charge the assignee with the taxes not paid for two years.

It charges him with the taxes for one year only, allowing a credit for the taxes paid for a year not embraced in the agreement. This was not correct. A mortgage cannot thus be extended to a debt not embraced in its provisions where the mortgagee is seeking a foreclosure. 5 Gill. & John., 21.

The bill here seeks a foreclosure based upon the terms of this contract and mortgage, and no debt, except such as is authorized by it, can be decreed to be paid under it. He should be charged also with any expense, such as advertisements paid in connection with two years taxes.

Again, as we are treating of matters as to which the plaintiff should have been charged in the accounting, we deem it proper to dispose of the question of interest upon the $1,500 agreed to be paid under the contract. This court cannot agree with the view that the $1,500 became due upon a part-performance of the contract by the mortgagee, or that it was due upon its execution. The Chancellor found that when the place was put in full repair, the $1,500 was due. The contract, by its express terms, was for a possession of five years, and one of the considerations for the $1,500 agreed to be paid was that the place should be kept in repair. Until the expiration of this period, the sum agreed to be paid was not due.

The next question raised in the case is, whether this contract was assignable by the husband to the wife by simple writing signed by the husband without deed.

This contract is not in form a lease, nor is it an instrument by which an estate or interest of freehold or for a term of years of more than two years, or any uncertain interest of, in, or out of any messuages, lands, and tenements, is created, within the meaning of that section of our statute of frauds (Thomp. Dig., 177,) requiring a deed and two witnesses to pass such estate. It is an agreement to pay the sum of $1,500 to a party if he will enter upon certain lands and

do certain named acts in reference to said lands in the space of five years. Such an agreement is effective under our statute of frauds, (Thomp. Dig., 218,) to authorize an action, if in writing and signed by the party to be charged. It is simply a personal contract, an agreement by which a party enters upon the land of another and performs labor and service thereon. No such interest in the land passes as requires a deed. The next question raised in this case is, whether under our Constitution and laws such a contract is assignable by the husband to the wife. It appears from the evidence that there was a part-performance of the contract by the husband, who was to do the repairs upon the place, that separate moneys of his wife paid for a large portion of the improvements, and that an absolute transfer of the mortgage, duly executed, was made in consideration of this sum. Under the provisions of the Constitution (Art. IV., Sec. 26,) she had the power and right to acquire this interest. Mercer vs. Hooker, 5 Fla., 279.

It was a chose in action. Where the husband has repaid money loaned him by his wife, or transferred to her property in satisfaction of a just claim, she acquires a valid title which a court of equity will enforce. 44 N. Y., 298; 51 N. Y., 395; 51 Ill., 325; 7 Bush, 394; 29 Wis., 136; 2 Story Eq., 1372 to 1374.

The next question is, whether there was power in the wife to assign to plaintiff this chose in action, without the express written joinder of her husband in such assignment?

Section 4, Act of March 6, 1845, (Thomp. Dig., 221,) regulates the sale and transfer of the property of a *femme covert.* This section provides that "the husband and wife shall join in all sales, transfers and conveyances of the property of the wife, and the real estate of the wife shall only be conveyed by the joint deed of her husband and wife duly attested, authenticated and admitted to record, according to the Laws of Florida regulating conveyances of real proper-

ty." (Thomp. Dig., 221, §5.) The first clause requires the husband to join in the sale or transfer *of the property* of the wife; the second makes an express additional provision as to the disposition of her *real* property, restricting the method to a deed duly attested, &c. The term property, as used in the Constitution, has been held by all of the courts, construing similar provisions upon the same subject, to embrace personal as well as real property, embracing choses in action, the property here involved. 14 East, 370; 19 Minn., 338; 2 Cal., 289; 35 Ala., 653; 4 Allen, 342; 1 C. E. Green., 512; 1 La., 1; 32 Conn., 1; 14 Iowa, 30; 32 Md. 214; 24 Miss., 245; 31 Barb., 132; 99 Mass., 561.

It should be limited in its signification by the words with which it is found connected. (11 East, 290-296.) The context here makes it clear that it embraces personal property generally, and we are inclined to the view that it includes a chose in action of the wife; but without expressly deciding this question (as it was not even alluded to in the argument) we are of the opinion that in this case there have been such acts of the husband as will amount to a joining in the transfer or assignment the wife made of this chose in action, within the meaning of this statute. This section must receive a liberal construction in view of the character of personal property. The muniment of title by which it is held is not of so high a character as that required to evidence ownership of real estate. A majority of commercial transactions, involving sales or transfers of personal property, are not evidenced by writing. The title passes by delivery, without any formal written instrument. It was not the purpose or the effect of this statute to change this rule, and require a formal written instrument to pass the title. It must, therefore, receive a construction consistent with this fact. Assent by the husband to such sale or transfer by the wife, either express or implied, must, therefore, be effective to

divest the title of the wife and to constitute a joinder of the husband.

Take the case of a wife having a gift of fifty dollars as her separate property under the Constitution. Is she, in the event she desires to purchase some articles for domestic use, required to execute a formal instrument, in which her husband joins, transferring her interest in the money to the vendor?

In the present case a formal assignment was executed by the wife, and the rule to be applied to it may be different from that applied to an ordinary transfer of the property of the wife without any such formal instrument. In this case the husband assigned the chose in action to the wife by a written instrument, in which he authorized her to assign and transfer it to another party. This, we think, shows the written assent of the husband to this act of the wife, and as it was unnecessary to have any formal deed or written instrument to make such an assignment, (as such assignment may be by parol,) we think it was a joining within the meaning of the statute, even admitting its application to the present case.

The next question is, whether such a contract for service in the construction and repair of those buildings and the protection of the plantation is, in its nature, assignable? This contract had been partially performed by the mortgagee, through the assistance of his wife, before the assignment. A large part of the repairs was done in fact under his supervision and through the assistance of her funds, even after the formal assignment. In general the benefit of an agreement may be assigned in equity. Where there is some personal confidence in the contract, or it is of a fiduciary character, (14 Conn., 344, C. John. Chy., N. Y., 469,) or where the contract contains a provision against assignment, or where the assignment is illegal or contrary to public policy, then it cannot be upheld. Fry on Spec. Perf., 107.

Under the circumstances of this case we cannot find that it is embraced in these, or any of the other exceptions to the general rule announced.

The next question is as to the effect of the assignment of this chose in action. It was not negotiable paper. The rule is that the assignee of a chose in action stands in the place of the assignor, subject to all the equities between the parties. 2 Wash., 317; 1 Dall., 23; 2 John., 612; 19 E. L. & Eq., 97; 16 Wall., 276; 1 Ves., Jr., 249; 63 Ill., 485.

The claim of Guilmartin & Co. has no connection with the mortgage. They say expressly that they know nothing of it.

The only other equity claimed here arises out of a fraudulent transaction alleged by the defendant to have existed between the mortgagee in this case, herself and her son, Wm. M. Tunno. It appears that the land which was the subject of this mortgage was originally purchased by the son of the defendant, and that when he became embarrassed he gave it to his mother, the defendant. The defendant alleges that the present contract and mortgage was all a sham executed to protect this property, and that in fact, contrary to the express terms of the agreement, nothing was to be paid to the mortgagee by her for his services in repairing the houses and putting the plantation in order; that he was indebted to her son for advances before that time made to him, and that the mortgagee, who was the assignor of the plaintiff's assignor, and in whose place the plaintiff stands, agreed to take his own debt to her son in payment of his debt to her. This is the testimony of her son, W. M. Tunno. This witness has a direct interest in establishing the fact that the debt secured by this mortgage is the debt due him by the mortgagee, and for that reason his testimony should, under all the circumstances, not be regarded with that degree of credit which attaches to the testimony of a disinterested witness. Again, we would

not feel disposed to give effect to an admitted fraud against his creditors. As to this, however, we do not say that this might not be an equity as against this plaintiff if sustained by legal evidence.

The only testimony here to establish this fact is that of Wm. M. Tunno to the declarations and agreement of the deceased mortgagee.

As against an assignee of the mortgagee, this testimony is inadmissible. Chapter 1983, Laws.

The assignor of the plaintiff was the mortgagee's assignee, and the plaintiff is entitled to stand in his place. The statute expressly provides that no such person shall be " examined as a witness " in regard to such communication or agreement of the deceased party, and while we perceive no objection by the plaintiff in this record to such examination, still in a suit in equity we deem it our duty to regard and enforce the express provision of the statute covering the subject.

The decrees against the defendant, E. M. Tunno, must be reversed for the reasons stated.

We next treat the appeal of M. K. Jessup & Co. There is no decree in this record against these parties signed by the judge. There is an entry in the record ordering the bill to be taken for confessed signed by plaintiff's attorneys. Anterior to this, there is an affidavit by plaintiff's attorneys that M. K. Jessup & Co. reside in New York, as shown by the return of the sheriff, that they are not to be found in the county, and a suggestion that they reside in New York, and there is an order of publication by the judge. There is no evidence by "affidavit to the judge" that any publication was ever made of this order. This is a requirement of the statute in order to perfect a constructive service in such cases, and it must appear in the record ; nor is there any authority in such cases for an order taking the bill *pro confesso* to be entered by the plaintiff's attorneys. It must be

granted by the judge. (Thomp. Dig., 452.) The persons composing the firm of M. K. Jessup & Co. having appeared upon this appeal in this court, upon the return of the cause to the Circuit Court must be considered as regularly before the court in like manner as if duly served with process. 13 Fla., 368; 1 Pike, 50, 376, 386, 405; 4 Bibb, 84, 167.

The decrees of the 21st day of February, A. D. 1877, and of the 16th day of July, 1877, and the order taking the bill as confessed against M. K. Jessup & Co., are reversed and set aside, and the case is remanded for further proceedings conformable to law and not inconsistent with this opinion.