D. E. PHILLIPS, B. I. MCKINNEY AND MRS. B. I. MCKIN-NEY, *Appellants*, v. R.. W. ATWELL, *Appellee*.

Opinion Filed November 19, 1918.

1. An agreement by which one enters upon the land of another and performs·labor thereon in cultivating the ground and harvesting crops is not an agreement by which an estate in the land is created.

2. Section 2192, General Statutes of Florida, 1906, providing for a lien on farms, orchards, etc., in favor of any person performing by himself or others any labor thereon, includes the use of whatever tools, implements or teams that may be contracted for and used by the laborer in the performance of the labor.

3. A lien is a charge upon property for the payment of a debt or duty.

4. Atwell had an agreement with Phillips to enter upon the latter's land and cultivate and harvest the crops and Phillips would pay to Atwell one hundred dollars per month for the services of Atwell and his mules and wagon on the place. Before the expiration of the year Phillips sold the land to McKinney who knew of the agreement between Phillips and Atwell, and that the latter had not been paid for the length of time he had worked on the place, but McKinney did not continue the agreement with Atwell nor assume the contract for the unexpired time. *Held*, that a

lien existed in favor of Atwell upon the lands for the length
of time he labored upon the place to the date of sale to
McKinney, but no lien existed upon the land as against
McKinney for the remainder of the contract year.

5   Whether the recovery of attorneys' fees allowed under the
Statute, Section 2218, General Statutes, 1906, is allowable,
not decided.

Appeal from Circuit Court for Hillsborough County;
F. M. Robles, Judge.

Decree reversed.

*Binford & Reed* and *Andrews & Williams*, for Appellants;

*McKay, Withers & Phipps*, for Appellee.

ELLIS, J.—R. W. Atwell exhibited his bill in equity in
the Circuit Court for Hillsborough County against D. E.
Phillips, B. I. McKinney and his wife to enforce a lien
against certain lands under the provisions of Sections
2192, 2199, 2210 and 2212 of the General Statutes of Florida, 1906.

The bill in substance alleged that on the 27th of November, 1914, D. E. Phillips owned the lands described upon
which he conducted a farm and on that day employed Atwell for the term of one year from that date at a salary of
one hundred dollars per month to "take charge of, manage,
operate and labor" upon the farm; that Phillips permitted Atwell and his family to occupy a dwelling-house
situated on the premises; that Atwell entered upon the
performance of his duties under the agreement upon that
date and faithfully performed the same from thence

"hitherto," but that Phillips had not paid Atwell for his services, but had refused to do so except the sum of sixty dollars, which Atwell alleged he had received; that on July 14, 1915, Phillips sold and conveyed the premises by deed to B. I. McKinney, but before the sale Atwell advised and informed McKinney of the contract Atwell had with Phillips to "superintend, manage and labor" upon the farm for one year from November 27, 1914, that Phillips had only paid sixty dollars on account and that Atwell had a "claim against the land" for his labor and services; that McKinney purchased the land with full knowledge of Atwell's rights, and since that date had "without objection permitted" Atwell to "remain upon the said land and to work and cultivate the same in the same manner in which your orator (Atwell) had been managing, superintending and laboring upon same for the said D. E. Phillips under contract of employment as aforesaid;" that McKinney knew that Atwell expected to receive compensation for the services so rendered and for the full term of his employment, and that he claimed and would continue to claim a lien upon the land until the money that was due and should become due was paid. It was alleged that Atwell served for the full term of his contract, but that he had no express understanding or agreement with McKinney "that he is to receive any compensation for his services," but that the "reasonable and equitable value" of his services is the sum which Phillips had by the said contract agreed to pay. The bill claimed attorney's fees and prayed that Atwell's claim for labor under the contract for the full term of one year be decreed to be a lien upon the land, that an account be taken of the sum due, that the defendants be ordered to pay the same, together with attorneys' fees, and in default of the payment thereof by a certain day that the land

be sold and the proceeds of the sale be applied to the payment of the some due, costs, etc.

D. E. Phillips answered the bill, admitted that he was the owner of the land in November, 1914, and employed Atwell as alleged, claimed certain credits upon account, and admitted that he sold and conveyed the land to Mc-Kinney in July, 1915. The answer averred that Phillips told Atwell about the time of the sale that he could remain on the place and occupy the house, but that "Mc-Kinney did not want him to do or perform any more labor on the grove, but that he could remain on the place and cultivate and harvest the truck and garden crops until the end of the year 1915;" that he authorized Atwell to dispose of "all crops growing upon said land except the citrus fruit and to apply the proceeds upon his wages," etc.

McKinney and wife answered the bill, averring that they had no knowledge of the ownership of the land by Phillips on November 27, 1914, and the contract with Atwell and the performance by Atwell of his duties thereunder, admitting the purchase of the land from Phillips in July, 1914, and that on that date they were "advised and informed that the complainant (Atwell) had been superintending and managing and performing labor upon said farm for some time prior to said 14th day of July, A. D. 1915, and that complainant claimed that he had not been fully paid for such services." The answer denied, however, that Atwell or any one informed them that Atwell had been employed for one year from November 24th, 1914, or that he claimed or asserted a lien upon the land for his services. The answer also averred that Mc-Kinney and wife had no knowledge of any "rights of the complainant" against the land at the time they purchased it, and denied that they permitted Atwell to remain upon

the land and to work and cultivate the same in the same manner in which he had been "managing, superintending and laboring upon the same for the defendant, D. E. Phillips, under contract of employment" with any knowledge that complainant expected to receive compensation for such services for the full term of his employment. The answer denied that McKinney had any knowledge that the complainant claimed there was an amount due the land. It admitted that they knew or were informed that the complainant claimed that was an amount due for his services from Phillips, but avers that Atwell did not claim a right to hold any lien on the land for such services, but expressly agreed with McKinney that he, Atwell, "would release any rights or claims which he might have against said land and would look only to the defendant, D. E. Phillips, therefor." The answer denied that Atwell rendered any service or performed any labor on the farm, after the sale to McKinney, under any contract with Phillips, but that Atwell did perform labor on the farm under an agreement with McKinney as to compensation and he had been fully paid therefor. It was also averred that Atwell at the time of the sale of the land expressly agreed that his contract with Phillips would be immediately terminated.

After replication to the answers, testimony was taken before a Master, who was directed to make his report of the same to the court. Upon final hearing the court decreed that there was due from Phillips to Atwell $1,-084.28 principal, $85.05 interest, $116.93 attorneys' fees, $45.00 fee for Master, and $11.25 for publication of order and all costs, and decreed all such sums to be liens upon the land. It was decreed that Phillips should pay the aggregate of the said sums amounting to $1,342.51 to Atwell with 8% interest from the date of the decree within ten

days, and upon Phillips' failure to do so the land should be sold to satisfy the "terms of the decree," and that the defendants, Phillips, McKinney and wife, be barred from any equity of redemption. A Master was appointed to execute the decree. From this decree Phillips and Mc-Kinney and wife appealed.

The contract between Atwell and Phillips was a verbal one. It created no estate in the land, it being merely a personal contract to go upon the land and perform labor thereon. See Tunno, Jessup & Co. v. Robert, 16 Fla. 738. The contract provided that Phillips would pay Atwell one hundred' dollars per month for the service and labor on the place of Atwell and his mules and wagon. The statute provides for a lien in favor of any "person performing by himself or others any labor upon or in any farm, orchard, grove," etc., upon such farm, orchard, grove, etc. Sec. 2192, Gen. Stats., 1906, Compiled Laws, 1914. In a case where a man and his team are employed on a farm at a price for both the lien provided by the statute attaches. The statute is not perfectly clear that such was the legislative purpose, yet it can not be said that by the use of the words "performing by himself" any labor, etc., the Legislature intended to exclude the use of tools, implements and instrumentalities which in agricultural work are so necessary. So we think the statute includes the use of whatever tools, implements or teams that may be contracted for and used by the laborer in the performance of the labor on the farm. This seems to be the rule in Minnesota, Wisconsin, Michigan and New Hampshire as applied to liens provided by statute in favor of any person performing "manual labor" in the business of logging. See Martin v. Wakefield, 42 Minn. 176, 6 L. R. A. 362, 43 N. W. Rep. 966; Breault v. Archambault, 64 Minn. 420, 67 N. W. Rep. 348, 58 Am. St. Rep.

545; Hogan v. Cushing, 49 Wis. 169, 5 N. W. Rep. 490; McAuliffe v. Jorgenson, 107 Wis. 132, 82 N. W. Rep. 706; Mabie v. Sines, 92 Mich. 545, 52 N. W. Rep. 1007; Hale v. Brown, 59 N. H. 551.

It is not very clear from the evidence whether under the agreement with Phillips, Atwell was to use and did use the team on the farm, or whether the team was to be used to do work "outside" and "off the place," as Atwell testified. This question was not raised, however. The court below seemed to treat the contract as requiring the complainant to use the team on the place, under which circumstances a lien would attach for the labor of man and team, and we will so regard it. A lien existed, therefore, upon the "farm, orchard, grove, garden, park or other grounds" in favor of the complainant for his labor and use of his mules and wagon, the value of which was measured by the terms of the agreement, up to the date of the sale to the defendant, McKinney. There is sufficient evidence in the record to sustain the chancellor's finding that the defendant, McKinney, had notice of the existence of Atwell's claim for labor and that the latter did not waive his lien secured by the statute. This being true, we will not disturb the chancellor's finding upon this point. See Simpson v. First Nat. Bank of Pensacola, 74 Fla. 534, 77 South. Rep. 204. Nor do we think that there is any merit in the contention that Atwell is estopped from the enforcement of this lien as against McKinney. We do not hold that a lien such as Atwell held upon the farm could not be waived, nor that one holding such a lien may not by his conduct become estopped from enforcing it against a purchaser. The chancellor held that Atwell did not expressly nor impliedly waive his lien, nor was his conduct such as to estop him from enforcing it, and the record does not clearly show that his conclu-

sions on this point were erroneous. A close examination of the testimony shows, on the contrary, that the complainant did not attempt to waive his lien and that his conduct and language were not calculated to mislead the purchasers to his injury, who seemed to be fully aware of the claim of the complainant against Phillips and of the former's intention to hold the place until he was paid. Inferences may be drawn from certain portions of the testimony of Atwell, which considered alone may seem to be inconsistent with the facts as found by the Chancellor, but other and different conclusions may be drawn from the same evidence consistent with such findings with as much reason. We think the Chancellor's finding on this point should not be disturbed because we think the record fully sustains such findings of fact.

The question whether the complainant held and could enforce a lien upon the land as against the purchaser for the remaining four and one-half months approximately, immediately following the purchase, is next to be considered.

The complainant, Atwell, according to his own testimony, gave McKinney to understand before the latter concluded the trade for the place that Atwell claimed a debt against Phillips for the whole year's wages and that he intended to stay on the place until it was paid; that he had no contract with McKinney covering the period intervening the date of the sale July 14, 1915, and the date of the expiration of the contract November 27, 1915, for labor upon the place; that he did nothing at McKinney's request until after the contract expired by limitation of time, and that during that period following the purchase of the land by McKinney, Atwell "didn't have anything to do but stay there and work my little cane patch and potato patch." Although he did such work,

so he afterward said, as was contemplated by his "original contract" up to the 27th of November. It appears, however, from the testimony that his occupancy of the place during that period was with McKinney's consent who seems to have been merely passive, inactive, unresisting in that matter. Under such circumstances Atwell could not acquire a lien on the place for labor. No debt against McKinney would have been created, therefore there could be no lien, because a lien is a charge upon property for the payment of a debt or duty. See 17 R. C. L. 596; 1 Jones on Liens, Secs. 2, 3. It is, therefore, a question of whether McKinney assumed the debt or obligation of Phillips to Atwell under the contract when the former purchased the land, or whether the lien constituted an encumbrance upon the land to secure the payment of money to become due for labor not yet performed.

If neither theory is correct then it follows that no lien existed upon the land for work done by Atwell and his mules, intervening the date of the sale and November 27, 1915, under the employment by Phillips.

We have seen that the contract was merely a personal one for labor and created no estate in the land. See Tunno, Jessup & Co. v. Robert *supra*. The lien is a statutory lien and is not the result of an express contract. It is a right which the law gives when the person performing the service would have no other sure remedy. See Cummings v. Harris, 3 Vt. 244. The contract being a personal one between Phillips and Atwell cast no obligation upon McKinney when he purchased the land, and as he did not expressly or impliedly assume it, no debt against him was created under it. Atwell's possession of the land was notice only of the right by which he held possession; that was to enforce the lien which had been attached. But the lien attached not by virtue of the contract, but be-

cause of labor performed upon the place under an agreement with one whose relation to the title empowered him to procure such work to be done. Thus when Phillips sold the land he may have breached the contract with Atwell, who in a proper action may recover for the damages sustained from such breach, but it cannot be maintained that the statute creates a lien to secure the payment of the unascertained damage accruing from such breach. Atwell could not have performed work under the contract that would have created a debt against McKinney because there was no privity between them, and he had no right to remain upon the land under the contract because it created no estate nor interest in the land. To hold that the lien created by the statute constitutes an encumbrance to secure the payment of a debt not yet ascertained or even created, is to read into the statute a purpose which we think was never held by the Legislature. We think that the Chancellor erred in decreeing the existence of a lien in favor of the complainant for the entire year.

The question of the allowance of attorneys' fees to the complainant by the court is not raised by counsel for the appellants, and we do not deem it necessary at this time to discuss it, but attention is called to the fact that the statute (Sec. 2218, Gen. Stats., 1906, Florida Compiled Laws, 1914) has been held by the Circuit Court of Appeals of the United States to be void because in violation of the Fourteenth Amendment. See Union Terminal Co. v. Turner Const. Co., 247 Fed. Rep. 727.

This court held the act valid, however, in the case of Dell v. Marvin, 41 Fla. 221, 26 South. Rep. 188, but see Gulf, C. & S. F. Ry. Co. v. Ellis, 165 U. S. 150, 17 Sup. Ct. Rep. 255.

For the reasons stated the decree of the Chancellor is reversed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.