**In re PARALELO 42 CORPORATION, Debtor.**

**PARALELO 42 CORPORATION, Debtor-in-Possession, Plaintiff,**

v.

**FIRST NATIONAL BANK OF GREATER MIAMI, Defendant.**

**Bankruptcy No. 81–00803–BKC–SMW. Adv. No. 81–0384–BKC–SMW–A.**

United States Bankruptcy Court, S. D. Florida.

Feb. 1, 1982.

Morgan, Lewis & Bockius, Miami, Fla., for defendant.

C. Peter Buhler, Miami, Fla., for plaintiff.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

THIS CAUSE coming on to be heard upon a Complaint to Recover Property filed herein and the Court, having heard the testimony and examined the evidence presented; observed the candor and demeanor of the witnesses; considered the arguments of counsel and being otherwise fully advised in the premises, does hereby make the following findings of fact and conclusions of law:

Paralelo 42 Corporation is a debtor-in-possession (hereinafter referred to as debtor) which is seeking in this action to recover $4,304.96 from the First National Bank of Greater Miami (hereinafter referred to as bank), which previously maintained the debtor's accounts.

The debtor opened a regular checking account at the bank in November, 1980 which was the debtor's primary operating account. During the next several months a number of post-dated checks were written by the debtor and forwarded to suppliers. Numerous overdrafts in the account occurred during January, February and March. In late January, 1981, at the suggestion of a bank officer, another account was opened labeled "Special Account", although it was, in fact, a regular account with no special restrictions upon its use. On April 10, 1981, the first account was closed. At this time, there were post-dated checks outstanding on the closed account. There is conflicting testimony as to whether the bank knew of these checks. A bank officer testified that he was unaware of the post-dated checks while the debtor's book-keeper testified that she advised the bank of the outstanding post-dated checks which resulted in the bank officer's recommendation to close the account. In any event, the bank was never instructed by the debtor to dishonor any checks written on the first account.

At the opening of each account, officers of the debtor executed identical corporate resolutions which in pertinent part authorized the bank to:

Accept, honor and pay without further inquiry, and until the delivery to it of written notice of the revocation of the authority hereby granted, all checks and other orders for the payment or withdrawal of money deposited with said bank in the name of this corporation...

The debtor filed its voluntary Chapter 11 petition on May 27, 1981. After that date, thirteen checks totalling $4,304.96 were received by the bank for payment from the closed account. To satisfy these checks, the bank punched out the account number of the closed account and replaced it with the number of the open account. There was evidence presented by the bank to the effect that this was normal banking procedure where a depositor has multiple accounts at the same bank and had overdrawn or closed one of the accounts (although the bank officer was not able to state who was responsible for altering the checks when that occurred.)

The bank relys on the contractual arrangement between the debtor and itself to justify debiting the open account for the post-dated checks drawn on the closed account, pointing out the broad language in their agreement which authorizes payment from "money deposited with said bank in the name of this corporation". The debtor, on the other hand, points to the U.C.C. as enacted in Florida as prohibiting the bank's actions. The debtor's contention that the instrument upon which payment was made was not a check but a note, while novel, is not valid under Florida law which states explicitly that a post-dated check is none-

theless a check subject to all legal incidents pertaining to bank checks. Fla.Stat. 673.-114(1); Fla.Jur.2d *Banks* Section 215, pg. 361. The Florida Statutes further provide that unless the drawer of a post-dated check in writing notifies the bank upon which the check is drawn not to pay, the bank is not liable for payment. Fla.Stat. Section 659.36. By the terms of the agreement between the bank and the debtor, supported by the language of the Florida U.C.C., the bank was authorized to pay, on demand, checks drawn on the monies of the debtor on deposit in the bank until a written stop payment or other form of revocation of its authority is transmitted to the bank. Based on the language of the contract between the parties and the absence of statutory prohibition, the Court finds that the bank was authorized to pay the post-dated checks from money on deposit and did so in good faith.

Having settled the issue of the Florida law, it is necessary to focus attention on the applicable bankruptcy law to reach a final disposition of this matter. Under the Bankruptcy Code at 11 U.S.C. Section 542(c) a transferor or payor may transfer property of the estate in good faith if it does so without notice or knowledge of the commencement of the bankruptcy case. The Code reads in pertinent part:

> "(c) Except as provided in Section 362(2)(7) of this title, an entity that has neither actual notice nor actual knowledge of the commencement of the case concerning the debtor may transfer property of the estate, or pay a debt owing to the debtor, in good faith and other than in the manner specified in subsection (d) of this section, to an entity making such transfer or payment as if the case under this title concerning the debtor has not been commenced."

This enactment codified the result reached by the Supreme Court in *Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966), a case envoling the payment of a check by the debtor's bank. The check had been drawn before the bankruptcy petition was filed but was not paid by the bank to the payee until after the filing of the petition. The bank was without notice of the pending bankruptcy case. Under the specific language of the Bankruptcy Act in effect at that time, this transfer was invalid but the Supreme Court, applying the broad powers of equity available to the Bankruptcy Court, held that the payor-bank, having no notice of the bankruptcy case and no means of obtaining such notice, particularly in a voluntary case, was not liable for the payment of checks drawn on an account after filing of bankruptcy but prior to notice or knowledge of the filing. Congress in approving the present Bankruptcy Code gave statutory effect to the Supreme Court's decision.

In the instant case, the Court finds that there was no evidence that the bank had notice or actual knowledge of the filing of a bankruptcy case by its depositor when it made payment on the checks presented to it for payment. The Court finds further that the payment of checks out of one account though drawn on another was done in good faith under the terms of the contractual agreement existing between the parties. Based on these findings, the Court further finds that under 11 U.S.C. Section 542(c), the bank is not liable to the trustee for payment on checks drawn prior to filing bankruptcy but paid to creditor/payees after the filing of the bankruptcy case.

An order reflecting these findings of fact and conclusions of law shall be entered this date.