800 So.2d 280 (2001)
Felipe ALVAREZ, Jorge Alvarez, and Mirta Ramiro, Appellants/Cross-Appellees,
v.
Elsa ALVAREZ, Appellee/Cross-Appellant.
Nos. 3D00-1502, 3D00-1065, 3D00-1471.
District Court of Appeal of Florida, Third District.
October 17, 2001.
Rehearing and Certification Denied November 30, 2001.
H. Hugh McConnell, Coral Gables, for appellants/cross-appellees.
Gabriel M. Sanchez, for appellee/cross-appellant.
Before SCHWARTZ, C.J., and GERSTEN and GODERICH, JJ.
GODERICH, Judge.
Felipe Alvarez, Jorge Alvarez, and Mirta Ramiro appeal from a final judgment, and Elsa Alvarez cross-appeals from the same final judgment.[1] We affirm in part, *281 reverse in part, and remand for further proceedings.
The actions filed below by the parties sought, in part, to enforce an alleged oral agreement and two written agreements, and to recover the amount of a worthless check plus treble damages, prejudgment interest, and attorney's fees pursuant to section 68.065, Florida Statutes (1995). This matter proceeded to a bench trial, and as the evidence was presented, it became clear that the parties had very different views as to what transpired between them. As such, the trial court had the difficult task of piecing together the evidence and making specific findings of fact.
As to the oral agreement, Jorge and Felipe's position at trial was that in 1992, they entered into an oral agreement with Elsa whereby they would subdivide a tract of land owned by Elsa into four lots and construct the necessary site improvements to convert the land into buildable lots.[2] Pursuant to this alleged oral agreement, Jorge and Felipe would receive 40% of the net increase in value of the improved lots. Jorge and Felipe testified that they completed the necessary work in 1994, and as a result, the value of the lots increased. Elsa, on the other hand, denied that an oral agreement existed.
At trial, a written agreement dated March 8, 1994, was introduced. The agreement provided that Jorge was to construct a house on Lot 4 and that he would receive 40% of the profits when the house was sold. The contract further provided that the value of the land was $41,250, that the construction cost could not exceed $120,000, and that Elsa would pay the cost of construction. The house was completed within eight to nine months and eventually sold on April 24, 1996, for $260,000. At trial, the parties disagreed as to the actual construction cost.
A second written agreement dated September 29, 1995, was also introduced into evidence. This agreement provided that Elsa would sell Lot 1 for $35,000 to Jorge [Lot 1 Sales Agreement].[3] The Lot 1 Sales Agreement called for a deposit of $1,000 with the balance due at the scheduled closing on November 1, 1995. The parties agreed that Felipe gave Elsa a check for $1,000 and a $34,000 check postdated to January 10, 1996. Felipe testified that he advised Elsa that there were insufficient funds in his bank account for the $34,000 check and that he planned on funding the check with his share of the profits when the house on Lot 4 was sold. Specifically, Felipe testified that he told Elsa, "I don't have the money in the bank. I'm giving you a check for you to have this like an asset." Felipe also testified that when he gave Elsa the check he told her, "I don't have all the money in cash. I said I am going to give you a check for it, and as soon as you get 40 percent of the house, I put that in the bank, and you could cash the checks." On November 15, 1995, Elsa transferred Lot 1 to Felipe.[4] The settlement agreement showed that the purchase price was $35,000, but Elsa did not receive any additional funds at closing. Jorge and Felipe, however, signed a document at closing stating, in part, that they "hereby release any commission due from the sale of property located [on Lot 4]." Elsa's position was that the total purchase price for Lot 1 was discounted to $35,000 in exchange for a full and final release of all *282 commissions, labor costs, and liens incurred in building the house on Lot 4. Felipe's position was that the total purchase price was $35,000, that he was due more than $35,000 for his previous work in connection with the site-development and construction of the house on Lot 4, and that his release of those funds was to substitute for the $34,000 post-dated check.
After the closing on Lot 1, Elsa still had possession of the $34,000 check. Months later, Elsa attempted to negotiate the $34,000 check, but it was returned uncollected for insufficient funds.
Following the bench trial, the trial court entered a final order finding that the construction cost as to Lot 4 climbed to $181,000, and that "neither party owes each other any amounts on the house built on lot four." The trial court further found that "the parties intended to transfer title to lot number one for $35,000." The trial court, therefore, awarded Elsa $34,000 plus prejudgment interest from the date of closing on Lot 1. The trial court, however, denied treble damages and attorney's fees as to the worthless check claim. As to Jorge and Felipe's claims under the oral agreement, the trial court found against them on Lot 2 finding: "Finally, defendants claim a profit on the sale of lot number two. The court finds that by the time of the sale of that lot, whatever contractual relationships existed between the parties had long ceased. Not to mention that the statute of frauds requires such contracts to be in writing." The final judgment did not address Jorge and Felipe's claim as to Lot 3. This appeal and cross-appeal follow.
Jorge and Felipe contend that the trial court erred by finding in Elsa's favor as to their claims for Lots 2 and 3.[5] We agree.
The trial court advanced two reasons when ruling against Jorge and Felipe as to their claim for breach of the alleged oral agreement regarding Lots 2 and 3. First, we address the trial court's finding that the "statute of frauds requires such contracts to be in writing." Elsa relies on section 725.01, Florida Statutes (1991),[6] to support the trial court's finding that the oral agreement was unenforceable under the statute of frauds. Pursuant to section 725.01, an oral agreement to transfer an interest in land is unenforceable. McCloud v. Davison, 719 So.2d 995, 997 (Fla. 5th DCA 1998); Avery v. Marine Bank & Trust Co., 216 So.2d 251 (Fla. 2d DCA 1968); Blynn v. Hirsch, 124 So.2d 314, 315 (Fla. 3d DCA 1960). Contrary to Elsa's interpretation of the alleged oral agreement, the agreement does not involve an agreement to convey an interest in real property; rather, the alleged oral agreement is an agreement to perform labor and services to improve real property. See Phillips v. Atwell, 76 Fla. 480, 80 So. 180 (1918); Tunno v. Robert, 16 Fla. 738 (Fla.1878). As such, section 725.01 is not applicable.
Next, we address the trial court's finding that "by the time of the sale of that lot, *283 whatever contractual relationships existed between the parties had long ceased." Although we are not certain what the trial court meant by that statement, if the alleged oral agreement was performed, as testified to by Jorge and Felipe, the fact that the "contractual relationships [that] existed between the parties had long ceased" does not render the alleged oral agreement unenforceable.
Therefore, we reverse the portion of the final judgment denying Felipe and Jorge's claims as to Lots 2 and 3 and remand for further proceedings. A review of the final judgment does not clearly indicate whether the trial court actually found that an oral agreement existed between the parties. Therefore, on remand, the trial court is to first determine whether an oral agreement existed between the parties, and if so, the terms of the oral agreement and whether the parties performed the oral agreement.
Elsa cross-appeals contending that the trial court erred by failing to award treble damages and attorney's fees pursuant to section 68.065, Florida Statutes (1995).[7] We agree.
Pursuant to section 68.065, if a check is returned for insufficient funds, the payee may bring a civil action against the maker of the check if the maker does not pay the amount of the check in cash to the payee within 30 days following written demand. If the payee prevails, in addition to the amount of the check, the payee is also entitled to three times the value of the worthless check, attorney's fees, and costs.[8]
In the instant case, Felipe issued a $34,000 check to Elsa that was returned due to insufficient funds. Thereafter, Elsa sent Felipe a written demand for the $34,000 as required by section 68.065. After the 30-day statutory notice period expired, Elsa filed a civil action pursuant to section 68.065. Although the trial court found that Elsa was still owed $34,000 as a result of the sale of Lot 1, the trial court did not award treble damages nor attorney's fees finding that the parties never intended "to act on the check."
A review of the record does not support the trial court's finding. Felipe testified that when he gave Elsa the $34,000 check, he explained to her that he intended to fund the check with the proceeds from the sale of Lot 4, and that he was giving Elsa the $34,000 check for her to "have this like an asset." Felipe's testimony explains why he gave Elsa a postdated check and clearly indicates that he intended for Elsa to negotiate the check. Moreover, Felipe's contention that he never intended for Elsa to negotiate the check is inconsistent with his testimony that the check was "like an asset." If he truly believed that Elsa would never cash the check, then the check is basically a worthless piece of paper, and would not be any *284 sort of "asset." Moreover, the fact that the check was post-dated does not relieve Felipe from civil liability under section 68.065.[9]See Carnival Leisure Indus., Ltd. v. Aubin, 830 F.Supp. 371, 374-75 (S.D.Tex.1993)(citing Tex. Bus. & Com. Code Ann § 3.114(a))("The negotiability of a draft is not affected by the fact that it is post-dated, ante-dated, or not dated at all."), rev'd on other grounds, 53 F.3d 716 (5th Cir.1995); Allied Color Corp. v. Manufacturers Hanover Trust Co., 484 F.Supp. 881 (S.D.N.Y.1980)(holding that a post-dated check is not a check because not payable on demand, but rather a draft); In re Paralelo 42 Corp., 18 B.R. 433 (Bankr.S.D.Fla.1982)(holding that under Florida law, post-dated check is a check, not a note); Morrison v. Shanwick Int'l Corp., 167 Ariz. 39, 804 P.2d 768 (Ct.App.1990)(holding that post-dated check can provide basis for claim under civil "bad check" statute; holding that post-dated check not a check because checks are payable upon demand, but instead a draft); Wright v. Bank of America, N.T. & S.A., 176 Cal.App.2d 176, 180, 1 Cal.Rptr. 202, 204 (1959)(holding that a "postdated check is nonetheless a check because" it is "payable on or at any time after the day of its date...."); Thompson v. Adcox, No. E2000-01843-COA-R3-CV, 2001 WL 914004, at * 5-6 (Tenn.Ct.App.2001)(holding that fact that check is post-dated does not preclude recovery under civil worthless check statute); but see Wadsworth, Inc. v. Schwarz-Nin, 951 F.Supp. 314, 324 (D.P.R.1996)("[A] postdated check as opposed to other checks, is more akin to a promissory note than a typical draft."); In re Alkap, Inc., 54 B.R. 151, 154 (Bankr.D.N.J.1984)(postdated check similar to promissory note in that both constitute no more than promise to pay); Griffin v. Commissioner, 49 T.C. 253, 261, 1967 WL 1261 (1967)("A postdated check is not a check immediately payable but is a promise to pay on the date shown. It is not a promise to pay presently and it does not mature until the day of its date, after which it is payable on demand the same as if it had not been issued until that date although it is, as in the case of promissory note, a negotiable instrument from the time issued."); Torrance Nat'l Bank v. Enesco Fed. Credit Union, 134 Cal.App.2d 316, 329, 285 P.2d 737, 739 (1955)("An essential characteristic of a check is that it be payable on demand"). Further, the fact that Felipe intended, but was not able to fund the post-dated check with the proceeds from the sale of Lot 4, does not relieve him from liability under section 68.065. Therefore, Felipe was liable to Elsa not only for the amount of the worthless check, but for triple the amount of the check, reasonable attorney's fees, and court costs. Accordingly, the trial court erred by not awarding treble damages and attorney's fees to Elsa.
Affirmed in part, reversed in part, and remanded for further proceedings.
NOTES
[1] Felipe is Jorge's father. Mirta is Jorge's mother. Elsa is not related to either Felipe, Jorge, or Mirta.
[2] Jorge is a licensed general contractor.
[3] Although the Lot 1 Sales Agreement was between Elsa and Jorge, Elsa eventually sold the property to Felipe.
[4] On June 4, 1996, Felipe transferred Lot 1 to Mirta.
[5] The final order is silent as to Lot 3. We assume that the trial court inadvertently failed to adjudicate the claim as to Lot 3. Because the parties presented the same arguments for both Lots 2 and 3, this Court's finding as to Lot 2 also applies to Lot 3.
[6] Section 725.01 provides, in part, as follows: No action shall be brought ... upon any contract upon the sales of lands, tenements or hereditaments or of any uncertain interest in or concerning them ... unless the agreement or promise upon which such action shall be brought, or some note or memorandum thereof shall be in writing and signed by the party to be charged therewith or by some other person by him thereunto lawfully or authorized.
[7] Section 68.065(1) provides, in pertinent part:

In any civil action brought for the purpose of collecting a check, draft, or order of payment, the payment of which was refused by the drawee because of the lack of funds, credit, or an account, ... and where the maker or drawer fails to pay the amount owing, in cash, to the payee within 30 days following a written demand therefor, as provided in subsection (3), the maker or drawer shall be liable to the payee, in addition to the amount owing upon such check, draft, or order, for damages of triple the amount so owing.... The maker or drawer shall also be liable for any court costs and reasonable attorney fees incurred by the payee in taking the action....
[8] Section 68.065 provides an exception to awarding treble damages, but that exception is not applicable in the instant case. See § 68.065(6), Fla. Stat. (1995).
[9] Unlike the civil worthless check statute, the criminal worthless check statute, section 832.05(2)(a), Florida Statutes, does not apply to any post-dated check or "any check when the payee or holder knows or has been expressly notified prior to the drawing or uttering of the check, or has reason to believe, that the drawer did not have on deposit or to his credit with the drawee sufficient funds to ensure payment...."